# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2720

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Ronnie Blade, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 15, 2003

Filed: July 18, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Ronnie Blade appeals his conviction for conspiracy and distribution of crack cocaine. We affirm.

## I.    BACKGROUND

With the help of a confidential informant (CI), Officer Mario Cathy of the Kansas City police department made four controlled buys of crack cocaine from Blade in late 2000 and early 2001. Cathy first purchased cocaine from Blade on

November 30, 2000. He conducted field tests on and weighed this purchase, which tested positive for cocaine base and weighed 14.9 grams. On December 5, 2000, Cathy again purchased cocaine from Blade. Field tests revealed the substance to be cocaine base weighing 14.3 grams. On December 28, 2000, Cathy purchased more cocaine from Blade. This substance field tested positive for cocaine base and weighed 14.3 grams. Finally, on January 4, 2001, Cathy purchased a fourth quantity of cocaine from Blade. This purchase field tested positive for cocaine and weighed 13.7 grams. Following this fourth purchase, Blade was arrested. He was charged with one count of conspiracy to distribute cocaine base under 21 U.S.C. § 841(a)(1) and 846 and under the enhanced statutory penalties of 21 U.S.C. § 841(b)(1)(A), and four counts of distributing crack cocaine under 21 U.S.C. § 841(a)(1) and under the enhanced statutory penalties of 21 U.S.C. § 841(b)(1)(B).

Danielle Jansen, a government criminalist employed by the Kansas City police department in the crime lab, testified at trial regarding further testing on the cocaine that Cathy purchased from Blade. Jansen performed two types of tests on the substances, both of which indicated that the substances in question were crack cocaine. Jansen also weighed the substances, finding a total weight of 51.78 grams. Jansen explained that the difference between her weight results and Officer Cathy's was likely explained by the fact that Cathy would have weighed the plastic bag in addition to the drugs inside of it, while Jansen took the substances out of the bags to weigh them.

Prior to trial, Blade discharged the public defender appointed to represent him and undertook to represent himself, with standby counsel. During trial preparation, through Rule 17(b) of the Federal Rules of Criminal Procedure, Blade attempted to subpoena a chemist from an independent laboratory.[1] Blade included this with

---

[1]Blade's initial public defender had sent the drug sample to an independent chemistry lab for analysis.

requests for thirty-two other Rule 17(b) subpoenas, stating only that the witnesses would give relevant testimony. The magistrate judge declined to issue any of the thirty-three subpoenas requested by Blade.

A jury returned guilty verdicts on all five counts, with special verdict findings that in Count One, Blade conspired to distribute fifty grams or more of cocaine base and that in Counts Two through Five, Blade distributed, on each occasion, five grams or more of cocaine base. These findings made Blade eligible for the enhanced statutory penalties of 21 U.S.C. §§ 841(b)(1)(A) & (B). Pursuant to these enhanced penalty statutory provisions and because of his criminal history, Blade was sentenced on each count to life imprisonment without possibility of release, with the five life sentences to be served concurrently.

Following trial, Blade's standby counsel realized that the minimum drug amounts had not been alleged in any of the five counts of Blade's indictment, and Blade moved for a new trial. The government admitted the error and that the amounts should have been alleged in the indictment. This, and eleven other grounds (including the arguments that he advances on appeal) formed the bases for Blade's motion for new trial, which the district court denied. At sentencing, the district court found that the government's intent to seek enhanced statutory penalties was adequately set forth in the indictment. Further, because the enhanced penalties and drug amounts were submitted to the jury in special verdict form, Blade was not prejudiced by the indictment's failure to allege drug quantities.

On appeal, Blade argues that the failure of the government to allege specific drug amounts is reversible error under Apprendi v. New Jersey, 530 U.S. 466 (2000), that the government should have been required to produce the CI for Sixth Amendment cross-examination purposes, and that he should have been allowed to subpoena the independent lab chemist to prove that the amount from Count One was less than fifty grams.

## II.   DISCUSSION

A trial court's denial of a motion for a new trial is reviewed for an abuse of discretion.  United States v. Munoz, 324 F.3d 987, 991 (8th Cir. 2003).  The district court should grant a new trial only if the evidence weighs heavily against the verdict, indicating that a miscarriage of justice may have occurred.  Id.

The government concedes that under Apprendi, any fact, other than a prior conviction, which increases the penalty for a crime beyond the prescribed statutory maximum must be charged in the federal indictment.  United States v. Cotton, 535 U.S. 625, 627 (2002).  The amount of drugs Blade was charged with was not included in the indictment, in violation of Apprendi.  However, Blade did not bring the issue to the district court's attention until after trial, and therefore the issue is subject to plain error review.  See United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988) (holding that defendant's failure to object at trial generally precluded him from asserting the error in a motion for new trial absent plain error).

In Cotton, the Supreme Court analyzed a similar claim.  The defendant in Cotton was charged in the original indictment with conspiring to distribute and possession with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base.  Five months later, the government filed a superceding indictment which extended the time periods of the conspiracy and added defendants, but did not allege any of the threshold levels of drug quantity for enhanced penalties under 21 U.S.C. § 841(b).  The defendant did not object to the indictment at trial, and the Court therefore analyzed his defective indictment claim for plain error under the test set forth in Federal Rule of Criminal Procedure 52(b) and United States v. Olano, 507 U.S. 725, 732 (1993).  Under this test, a plain error must affect the substantial rights of the complaining party before he can obtain relief, but even then, the court should reverse only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Cotton, 535 U.S. at 631-32 (internal quotations

omitted, alteration in original). The <u>Cotton</u> Court skipped immediately to the latter part of this test and determined that the indictment error in that case did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings," because the evidence that the conspiracy involved at least fifty grams was overwhelming. <u>Cotton</u>, 535 U.S. at 632-33.

Here, the evidence presented at trial also overwhelmingly shows that Blade was subject to the enhanced penalties in Counts One through Five. The evidence is undisputed with respect to Counts Two through Five–Blade clearly distributed more than five grams to Officer Cathy on each of the four controlled buys. Blade does not even argue otherwise. However, Blade does dispute the veracity of the fifty gram calculation for the total conspiracy, an argument that we address later in this opinion. Even so, the evidence with regard to this count is strong. The evidence shows that two Kansas City police employees separately weighed the substances and found the combined weight of the substances to be more than fifty grams. Furthermore, Blade was subject to, and received, sentences of life without parole on Counts Two through Five. Therefore, even if we were to accept his argument relating to the fifty gram amount in Count One, his life without parole sentence would remain unchanged. In light of the foregoing, like the <u>Cotton</u> Court, we believe that the error did not affect the fairness, integrity, or public reputation of the judicial proceedings. Blade's first contention is without merit.

Blade next argues that he was unable to confront his accusers in violation of the Sixth Amendment because the government did not produce the CI who introduced Officer Cathy to Blade. The government responds that it attempted to produce the CI, but he disappeared and they were unable to locate him prior to or during trial. Furthermore, it argues that the CI is not Blade's "accuser" within the meaning of the Sixth Amendment because Cathy alone purchased the drugs from Blade and he is the only "accuser" Blade has the constitutional right to confront. We agree. We have reviewed the record, and the CI was only mentioned at trial in the context of

peripherally accompanying Officer Cathy on two of the controlled buys. After being introduced to Blade during the first two buys, Cathy alone contacted Blade regarding the final two drug sales, and Cathy is the person who purchased the drugs during all four transactions. Furthermore, the district court agreed that the government attempted to secure this witness, but was unable to, due to actions beyond its control. The district court did not abuse its discretion in this regard. This ground for relief is also without merit.[2]

Finally, Blade contends that he was prejudiced by the magistrate judge's refusal to issue a subpoena to the independent laboratory chemist under Rule 17(b) of the Rules of Criminal Procedure.[3] Blade argues that the independent laboratory calculated the total weight of the cocaine base to be less than fifty grams, which would render him ineligible for the enhanced statutory penalties of section 841(b)(1)(A). The government argues that the magistrate judge was not required to issue an unsubstantiated subpoena under Rule 17. Furthermore, the government avers that any error is harmless because the chemist's report only affects Count One, and Blade was also sentenced to life without parole on Counts Two through Five.

Blade, proceeding pro se despite numerous warnings to the contrary, moved prior to trial for the issuance of thirty-three subpoenas pursuant to 28 U.S.C. § 1915(c) and Federal Rule of Criminal Procedure 17. However, his motion merely

---

[2]Blade asserts various other arguments relating to pretrial discovery and the alleged failure of the government to disclose Brady v. Maryland, 373 U.S. 83 (1963), materials. We have reviewed the record with regard to these allegations and agree with the reasoning of the district court in its order denying a new trial. See 8th Cir. R. 47B.

[3]This rule provides in part: "Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b).

stated that the requested witnesses would give relevant testimony. The magistrate judge found that this was not a satisfactory showing that the proposed witnesses were necessary for Blade's defense pursuant to Rule 17(b). We review a court's decision whether to grant the request for a Rule 17(b) subpoena for an abuse of discretion, and reversal is appropriate only if "the exceptional circumstances of the case indicate that the defendant's right to a complete, adequate and fair trial is jeopardized." United States v. Hang, 75 F.3d 1275, 1282-83 (8th Cir. 1996) (internal quotations omitted).

No such exceptional circumstances exist in this case. The magistrate judge did not abuse its discretion in refusing to issue the subpoena because Blade did not provide adequate information to the magistrate judge regarding how the proposed thirty-three witnesses were necessary to his defense. See id., 75 F.3d at 1283 (holding that the "burden is on the requesting party to show that the desired witnesses are necessary to an adequate defense"). In hindsight, there certainly is an argument that the independent chemist was necessary to Blade's defense, but Blade did not provide this information to the magistrate judge. Perhaps if the chemist's subpoena had been the only one requested, the magistrate judge may have been more likely to authorize issuance. But the magistrate judge can hardly be faulted for failing to root out the request for the chemist, buried in subpoena requests for thirty-three mostly irrelevant witnesses.

Furthermore, even if the magistrate judge should have issued the subpoena for the chemist, we find that it did not prejudice Blade's ultimate sentence because it is clear that the chemist would not have testified that Blade sold less than five grams during each of the four transactions. Thus, leaving aside the issue of the total weight of the crack cocaine charged in Count One, as we have noted, Blade was subject to, and received, life sentences without parole for Counts Two through Five. We find that because the magistrate judge did not err in declining to issue the subpoenas, the district court did not abuse its discretion in denying the motion for a new trial on this basis.

## III.  CONCLUSION

We have examined Blade's various arguments and find them to be without merit.  We affirm the district court.

MELLOY, Circuit Judge, concurring.

I agree that the defendant's <u>Apprendi</u> claim fails under the plain error analysis utilized by the United States Supreme Court in <u>United States v. Cotton</u>, 535 U.S. 625 (2002), because the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.  There was never any doubt in this case that the government was alleging that the drug quantity was in excess of fifty grams for purposes of Count 1, and that the defendant had two prior drug felony convictions, subjecting him to a mandatory life sentence.  Likewise, the quantity issue was submitted without objection to the jury, which found, beyond a reasonable doubt, that the quantity of drugs under Count 1 was in excess of fifty grams.  Under these circumstances, I agree that the failure to allege the drug quantity in the indictment does not warrant relief under plain error review.

Where I part company with the majority is its use of the imposition of life sentences on Counts 2-5 to support its conclusion on the <u>Apprendi</u> issue, as well as to demonstrate that the magistrate judge's refusal to issue a subpoena for the chemist did not prejudice the defendant.  As the majority notes, the evidence is undisputed with respect to Counts 2-5 that the quantity in each count was in excess of five grams.  The same cannot be said with regard to Count 1, however, given the conflicting laboratory report at issue in this appeal.  If the jury had found, as a factual matter, that the drug quantity in Count 1 was less than fifty grams, the defendant would not have been subject to a mandatory life sentence.  My review of the presentence report in this case shows that the defendant would then have been sentenced on Count 1 as a career offender with a sentencing guideline range of 360 months to life.  Although the life

-8-

sentences imposed on Counts 2-5 are clearly within that sentencing guideline range, the record is silent as to what sentence the district judge would have actually imposed on each count had he not been obligated to impose a mandatory life sentence on Count 1. Although Mr. Blade has an extremely serious criminal history, it is very possible that the district court would have determined that a thirty year sentence was adequate for a forty-six year old individual. Consequently, I am reluctant to rely upon the sentences imposed on Counts 2-5 to support the affirmance in this case.

I do believe, however, that the majority is correct that the magistrate judge did not err when he refused to issue the subpoena for the chemist in this case. Not only was the request for the chemist subpoena buried within the request for thirty-two other, largely irrelevant, subpoenas, but the motion was itself part of a larger group of pro se motions, most of which have little or no merit. The magistrate judge is not required under these circumstances to parse each section of each motion to find the kernel of merit that may exist. Under Rule 17 of the Federal Rules of Criminal Procedure, the defendant has the burden of showing the necessity of the presence of the witness for an adequate defense before a subpoena is issued at government expense. In this case, the defendant could simply have attached a copy of the chemist's report to the motion to alert the magistrate judge to the necessity for the chemist's presence. His failure to do so, or to in some other way alert the magistrate judge to the reason for the chemist's testimony, is the sole responsibility of the defendant. Given that the district court did not err in refusing the subpoena request, there is no need to conduct a harmless error analysis on this issue.

The result in this case is very unfortunate and demonstrates all too well the perils of a defendant electing to proceed pro se. The defendant's prior public defender sent the drugs to be analyzed by an independent laboratory, which found the total

weight of the drugs to be just under forty-seven grams.[4]  The defendant not only was unable to make an adequate motion to secure the attendance of the chemist, but it is clear the defendant did not even consider drug quantity to be a critical issue at trial. He failed to cross-examine the government chemist about the independent lab results, or even mention to the trial judge that there had been an independent analysis.  If a defense counsel or trial judge ever needs a concrete example of the dangers of pro se representation, this case certainly provides one.

In sum, I concur with the majority that the failure to subpoena the chemist was not the fault of the magistrate judge who refused to issue the subpoena, but rather the defendant who failed to adequately explain to the magistrate judge the necessity for the chemist's attendance at trial.  As to the Apprendi claim, I concur with the majority that the defendant is not entitled to relief because he has not shown that the error seriously affected the fairness, integrity or public reputation of the judicial proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]It is interesting to note that the lab report was not even made part of the appellate record in this case.  When the issue was discussed extensively at oral argument, appellant's counsel was granted leave to supplement the record with the lab report.  The lab report was then received from appellant's counsel showing the results of the independent laboratory analysis.