UNITED STATES of America

v.

**Jeremiah I. HACKLER, Private First Class (E–2), U.S. Marine Corps.**

NMCCA 201100323.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 15 April 2011.

22 Dec. 2011.

For Appellant: Maj Jeffrey Liebenguth, USMC.

For Appellee: Capt Samuel Moore, USMC.

Before the Court En Banc.

**PUBLISHED OPINION OF THE COURT**

FLYNN, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of one specification of desertion and one specification of breaking restriction, violations of Articles 85 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 934. The appellant was sentenced to 120 days confinement, reduction to pay grade E–1, and a bad-conduct discharge from the United States Marine Corps. In accordance with the terms of the pretrial agreement (PTA), the convening authority approved the sentence as adjudged, but suspended all confinement in excess of 75 days.

Counsel assigned no errors. We specified the following issue:

WHETHER AN ARTICLE 134 CLAUSE 1 OR 2 SPECIFICATION THAT FAILS TO EXPRESSLY ALLEGE EITHER POTENTIAL TERMINAL ELEMENT STATES AN OFFENSE UNDER THE SUPREME COURT'S HOLDINGS IN *UNITED STATES v. RESENDIZ–PONCE* AND *RUSSELL v. UNITED STATES,* AND THE COURT OF APPEALS FOR THE ARMED FORCES' OPINION IN *UNITED STATES v. FOSLER,* 70 M.J. 225 (C.A.A.F.2011), IN THIS CASE, WHERE THE APPELLANT PLED GUILTY, ENTERED INTO A PRETRIAL AGREEMENT WITH THE CONVENING AUTHORITY, WAS PROPERLY INFORMED OF THE ELEMENTS OF THE OFFENSE—INCLUDING THE TERMINAL ELEMENTS—BY THE MILITARY JUDGE, DID NOT OBJECT AT TRIAL TO THE SPECIFICATION AS DRAFTED, AND ADMITTED TO ALL OF THE ELEMENTS OF THE OFFENSE DURING THE PROVIDENCE INQUIRY? *Cf. United States v. Harvey,* 484 F.3d 453 (7th Cir.2007); *United States v. Cox,* 536 F.3d 723 (8th [7th] Cir.2008); *United States v. Awad,* 551 F.3d 930 (9th Cir.2009).

We have carefully considered the record of trial, the parties' briefs, and the matters presented during oral argument. We are convinced that in a case in which the appellant did not object at trial and pled providently, a specification alleging breaking restriction necessarily implies the terminal element of Article 134. We conclude that the findings and sentence are correct in law and fact and there was no error materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

**Facts**

In December 2010, the appellant broke restriction by leaving his unit, traveling to his family's home in Florida, and remaining absent until mid-February. When he returned, he was charged with, among other things, breaking restriction, an Article 134 offense. The specification read as follows:

In that Private First Class Jeremiah I. Hackler, U.S. Marine Corps, on active duty, having been restricted to the limits of place of mess, billet, duty and worship, by a person authorized to do so, did, at Marine Barracks 8th and I, Washington, D.C., on or about 5 December 2010, break said restriction.

The appellant did not object to the sufficiency of this specification either before or during trial. Pursuant to a PTA, he pled guilty to the specification at trial. During the providence inquiry, the military judge explained the elements of breaking restriction, including the requirement that the conduct was prejudicial to good order and discipline, or of a nature to bring discredit upon the armed forces.[1] The appellant acknowledged both the explanation from the military judge and his understanding of the elements. Furthermore, during the providence inquiry, the appellant acknowledged that his commanding officer's decision to place him on restriction was connected to the commanding officer's mandate to maintain good order and discipline; he also agreed that, by breaking restriction, he "defied the commanding officer's orders," and compromised the good order and discipline within the unit.[2]

---

1. Record at 26.

2. *Id.* at 27–29.

## Discussion

 We review *de novo* whether a specification states an offense. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F.2006). In order to state an offense, a specification must allege every element of the offense "either expressly or by necessary implication, so as to give the accused notice and protect him against double jeopardy." *United States v. Dear*, 40 M.J. 196, 197 (C.M.A.1994) (citations and internal quotation marks omitted). Specifications alleging violations of Article 134 must therefore include the terminal element either explicitly or by implication. *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F.2011).

 In *Fosler*, the Court of Appeals for the Armed Forces (CAAF) held that the terminal element in an Article 134 offense must be expressly alleged or necessarily implied by the language of the specification. The CAAF found that merely alleging "wrongfully" in the specification and listing it under Article 134 were insufficient to necessarily imply the terminal element. *Id.* at 230–31. However, the CAAF limited its holding to specific circumstances, stating "in contested cases, when the charge and specification are first challenged at trial, we read the wording more narrowly and will only adopt interpretations that hew closely to the plain text." *Id.* at 230 (footnote and citation omitted). *Fosler* also cites, by comparison, to the holding in *United States v. Watkins*, 21 M.J. 208, 209–10 (C.M.A.1986), an earlier case that allows a more liberal interpretation of a specification first challenged on appeal.[3] In *Watkins*, the Court of Military Appeals (CMA) stated:

> Where, as here, the specification is not so defective that it "cannot within reason be construed to charge a crime," the accused does not challenge the specification at trial, pleads guilty, has a pretrial agreement, satisfactorily completes the providence inquiry, and has suffered no prejudice, the

conviction will not be reversed on the basis of defects in the specification.

*Id.* at 210. Thus, following *Fosler* and *Watkins*, we view allegations of defective specifications through different analytical lenses based on the circumstances of each case. Where the specification was not challenged at trial, we liberally review the specification to determine if a reasonable construction exists that alleges all elements either explicitly or by necessary implication. Where the specification was challenged at trial, however, we review it by construing its wording narrowly, adhering closely to the plain text.

 We now turn to the case at hand and examine the challenged specification to determine whether the terminal element was necessarily implied. Unlike *Fosler*, the appellant here did not object at trial; instead, pursuant to a PTA, he pleaded guilty to the offense at trial. Therefore, we are not constrained to an interpretation that "hew[s] closely to the plain text." *Fosler*, 70 M.J. at 230. Instead, as in *Watkins*, we liberally review the specification to see if it "cannot within reason be construed to charge a crime." *Watkins*, 21 M.J. at 210. Similar to *Watkins*, the military judge here explained to the appellant the elements of the offense, including the terminal element. The appellant did not express confusion or uncertainty; rather, he stated that he understood the elements as explained to him. He further acknowledged that his conduct undermined the authority of his commanding officer and that it was therefore prejudicial to good order and discipline.[4] These factors distinguish this case from *Fosler* and place it in line with *Watkins*.

When we examine the specific offenses involved, moreover, we draw even further distinction from the adultery charge in *Fosler* and the offense at issue in this case. As the CAAF noted in *Fosler*, the mere allegation of "adulterous conduct" is most likely not a crime without the attendant impact on good order and discipline or the reputation of

---

**3.** *Fosler* again cites by comparison to *Watkins* when restating the narrower interpretation of specifications first challenged at trial. "Because Appellant made an R.C.M. 907 motion at trial, we review the language of the charge and specifi-

cation more narrowly than we might at later stages. *Watkins*, 21 M.J. at 209–10." *Fosler*, 70 M.J. at 232.

**4.** Record at 28–29.

the service. *Fosler*, 70 M.J. at 230. Breaking restriction, on the other hand, involves a uniquely military offense based on obedience to orders,[5] a foundation of the armed services. *See Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (noting "fundamental necessity of obedience" and correlative necessity for imposition of discipline). Here the specification expressly states that the restriction was imposed by a person authorized to do so, indicating it was a valid order. The specification alleges that the restriction was broken; therefore, by implication the order was violated. Nothing could be more inimical to good order and discipline than failing to do that which one has been ordered to do, or by doing that which one has been ordered not to do. We are mindful as well that "the military is, by necessity, a specialized society separate from civilian society.... [T]he military has, again by necessity, developed laws and traditions of its own during its long history." *Parker v. Levy*, 417 U.S. at 743, 94 S.Ct. 2547. It follows then, that declaring a specification alleging a breach of restriction does not state an offense unless the obvious—the effect on reputation and/or good order and discipline—is explicitly recited in the specification would not only repudiate decades of military jurisprudence, but it would undermine centuries of military training and culture.

In sum, there are several reasons why this case is distinguishable from *Fosler* and aligns itself with *Watkins*. First, the appellant did not object to the sufficiency of the specification at trial. Second, the appellant pled guilty to the specification. Third, the military judge explained to the appellant that the specification contained the terminal element during the providence inquiry. Fourth, during the providence inquiry, the appellant acknowledged that he understood the terminal element as explained to him by the military judge. Fifth, the appellant provided an apt explanation to the military judge of how his conduct satisfied the terminal element, that is, how it was prejudicial to good order and discipline. Last, the language of the specification implicitly contains an element of prejudice to good order and discipline.

For these reasons, and in consideration of the principles laid out by the CAAF in *Fosler* and the Court of Military Appeals in *Watkins*, we conclude that the specification stated an offense. The terminal element, that the conduct was prejudicial to good order and discipline was included by necessary implication in the specification. We are satisfied, then, that the appellant enjoyed what has been described as the "clearly established" right of due process to " 'notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.' " *Fosler*, 70 M.J. at 229 (quoting *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948)).

### Conclusion

The findings and sentence as approved by the convening authority are affirmed.

CARBERRY, S.J., BEAL, J., PAYTON–O'BRIEN, J., WARD, J., and MODZELEWSKI, J., concur.
REISMEIER, C.J., filed a concurring opinion joined by MAKSYM, S.J. PERLAK, J., filed an opinion concurring in the result.

Senior Judge CARBERRY, Judge BEAL, Judge PAYTON–O'BRIEN, Judge WARD, and Judge MODZELEWSKI concur.

REISMEIER, Chief Judge, joined by Senior Judge MAKSYM (concurring):

I associate myself entirely with the majority opinion. I write separately to explain my perception of what *United States v. Fosler*, 70 M.J. 225 (C.A.A.F.2011) means, and what it does not.

Failure to state an offense is a legal conclusion; it is not an error. The error is in the drafting of a specification that fails to track the language of the criminal statute at issue. The test to be applied to determine whether the specification was drafted with sufficient error to be noticed depends, at least in part, on whether an accused challenged the specification at trial.

The legal reality is (and long has been) that the timing of a challenge to the legal

---

5. Significantly, the elements for breach of restriction emphasize the "order" underlying the

offense. MANUAL FOR COURTS–MARTIAL, UNITED STATES (2008 ed.), Part IV, ¶ 102b.

sufficiency of a specification determines the tolerance that courts have in the review of the alleged deficiency. A specification which may be minimally legally acceptable when first challenged on appellate review may be starkly different than a specification that would be minimally legally acceptable when it was first challenged at trial. Despite post-*Fosler* arguments that all specifications will now look alike, that has never been the law, and for policy reasons supporting the finality of judicial determinations, one would hope never will be the law. It should be no surprise to any criminal law practitioner that our system places great weight on finality. The concerns for finality have caused appellate courts in every American jurisdiction to readily countenance mistakes not challenged at trial, at least when the mistake is not accompanied by some degree of prejudice and lies outside of the limited realm of structural error.

While military jurisprudence has not always made these distinctions clear when discussing allegations of "failure to state an offense," it is impossible to overlook them when comparing the disposition of the cases. The outcome in *United States v. Watkins*, 21 M.J. 208 (C.M.A.1986), differed from that in *Fosler* not because *Fosler* establishes a "new" test or "new" application, but because Lance Corporal Fosler challenged his specification at trial, prompting the court to review the specification at issue with a more discerning eye. *Watkins*, by contrast, involved an accused who pleaded guilty with no challenge to his charge sheet. While both cases presented the court with the same "error"—departure from the text of the underlying statute in the drafting of the specification—the scrutiny employed in the analysis was, quite properly, different. The former was evaluated by a narrow reading adhering closely to the plain text to determine if each element was alleged expressly or by necessary implication; the latter was evaluated to determine whether the specification was "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." *Watkins*, 21 M.J. at 210 (quoting *United States v. Thompson*, 356 F.2d 216, 226 (2d Cir.1965)). *Fosler* did not change the law relative to

analyzing errors in drafting specifications. *Fosler* merely applied established law to Article 134 charges, requiring that the elements be alleged just as the elements are alleged for every other UCMJ violation. *Fosler* in no way altered the standards to be applied when an accused raises a challenge to a specification at trial, or when an appellant raises the challenge for the first time on appeal. If that is what the Court of Appeals for the Armed Forces (CAAF) intended, it is for CAAF, not us, to depart from the precedent of *Watkins* cited by CAAF in *Fosler*. CAAF is free to depart from *stare decisis*. We are not free to depart from CAAF's precedent.

The difference in how specifications are reviewed relative to how they are challenged stems both from the concern for finality and from the source of the right at issue. The right to a legally sufficient charge is grounded in the right to notice; the right to notice is rooted in the due process guarantees of the Fifth and Sixth Amendments' "right ... to be informed of the nature and cause of the accusation." The accused has a right to a specification that states an offense. He has a right to a specification that prompts a court to conclude that the specification—defective, perfect or somewhere in between—legally states an offense. But the answer to the legal question of whether a specification states an offense depends not only on the language of the specification, but also on the particulars of the test to be applied.

As with many legal rights, the test to be applied in the face of a challenge depends on whether the timing of the challenge supports a claim that the right to notice has been compromised. The right to a specification that states an offense does not exist simply to enforce slavish adherence to the well-drafted examples of charging documents contained within the Manual for Courts–Martial. The right to a specification that states an offense exists to ensure that every accused is provided constitutionally sufficient notice. If the timing of the challenge suggests that notice may have been impliedly given, the test applied should recognize the implication.

I think it is equally important to note that an accused cannot "waive" a challenge to a constitutionally defective specification. Likewise, I question whether he could truly "forfeit" the right to a constitutionally acceptable specification in a way that is analogous to forfeiting challenges to trial errors. A specification ultimately is either constitutionally infirm or it is not. But while an accused cannot "waive" a challenge to a constitutionally defective specification, a failure to timely challenge a specification will prompt reviewing courts to invest the specification with greater tolerance than would otherwise be acceptable. Again, I return to the point that "failure to state an offense" is not an error. It is a legal conclusion. If a specification fails to state an offense, it is irretrievably defective and must be dismissed.

Herein lies my concern with a plain error test championed by the Government and relied upon in the various circuit courts. The plain error test cannot suggest that a court can accept a failure to state an offense (the purported error), so long as the appellant was not prejudiced. It would be an odd world indeed where an error with jurisdictional consequences could be accepted, or even tested, for a lack of prejudice. The reality is that in those cases applying a plain error analysis, they do not conclude that the indictment failed to state an offense, but that no harm came of it. I will not belabor the point by listing the cases cited by this court in our order specifying the issue for review, nor those referenced by the parties in their excellent briefs submitted in response. I will note, however, that in those cases, although the courts concluded that the indictment did not comport with the technical requirements of pleading, or erred by omitting an explicit reference to an element, the defect did not deprive the appellant of his right to constitutional notice (lack of prejudice). Again, "failure to state an offense" was not the "plain" or "obvious" error the court found. The court found that the indictments stated offenses sufficiently to avoid prejudice to the appellants.

I am equally concerned with the lack of guidance in a "test" which suggests that the sufficiency of a specification will depend on whether it must hew closely to the text or whether it should instead be treated with greater tolerance. The question of whether something "hews closely" or is permitted greater tolerance informs the analysis, but provides no actual legal test under which that analysis may be applied.

I would embrace a plain error test as employed by the circuit courts, noting the review conducted is of whether the appellant suffered prejudice derived from the specification. In this case, there was an error: the specification departed from the text of the statute and failed explicitly to allege the terminal element. Despite the military judge's justifiable reliance on precedent then under attack at the appellate level, that error must be treated as plain or obvious because the appellant's case is before us on direct appeal. But that error did not prejudice the appellant, as I can reach the legal conclusion that the specification stated an offense when viewed under the deferential standard articulated in *Watkins*, and relying on the reasons stated in the majority opinion.

PERLAK, Judge (concurring in the result):

In my view, this specification does, by necessary implication, provide notice of the terminal element. I can conceive of no more apparent affront to good order and discipline than a deliberate breaking of the discipline-enforcing restriction order of a military commander. I would end the analysis there, upon a finding of no error, and affirm this guilty finding under Article 134.

The Court of Appeals for the Armed Forces' ruling in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F.2011), leaves me with the following reductive assessment. As a baseline, any specification brought under any punitive article which fails to state an offense is axiomatically not a crime and therefore must be set aside. Specifications under Article 134, in particular, in which the terminal element is not explicitly pled, must be assessed to determine if the specification nonetheless states an offense by necessary implication of the terminal element. *See* RULE FOR COURTS–MARTIAL 307(c), MANUAL FOR COURTS–MARTIAL, UNITED

STATES (2008 ed.). If the specification does not carry the necessary implication, then service courts of criminal appeals must review the procedural posture of the case. We look for any challenges made to the specification at the trial level to determine whether or not the specification may be affirmed. An appellant who contests the specification at trial and on appeal receives the narrow scrutiny of *Fosler.* An appellant who does not contest the specification at trial, approaches his appeal knowing that the analysis and holding in *United States v. Watkins,* 21 M.J. 208 (C.M.A.1986), awaits.

On the face of this specification, there is no error apparent which would beget the additional step of an analysis of the procedural posture or any determinations under *Fosler* or *Watkins.*

I concur in the ultimate conclusion of affirming the findings and sentence in this case.