UNITED STATES of America

v.

Jonathan E. LONSFORD, Lance Corporal (E-3), U.S. Marine Corps.

NMCCA 201100022.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 25 Sept. 2010.

29 Feb. 2012.

———

For Appellant: Capt. Michael Berry, USMC.

For Appellee: LT Ritesh Srivastava, JAGC, USN.

Before the Court En Banc.

MAKSYM, S.J., delivered the opinion of the court in which REISMEIER, C.J., CARBERRY, S.J., PAYTON–O'BRIEN, J., WARD, J., and MODZELEWSKI, J., concur. PERLAK, S.J., filed an opinion dissenting joined by BEAL, J.

## PUBLISHED OPINION OF THE COURT

MAKSYM, Senior Judge:

A special court-martial composed of members with enlisted representation convicted the appellant, contrary to his pleas, of one specification of wrongful distribution of a controlled substance and two specifications of adultery in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934. The appellant was sentenced to confinement for 5 months, reduction to pay grade E–1, forfeiture of $984.00 pay per month for a period of 5 months, and a bad-conduct discharge. The convening authority approved the sentence and ordered it executed.[1]

### Background

Lance Corporal (LCpl) M belonged to the same squadron as the appellant and considered the appellant to be his mentor and best friend. On 28 March 2009, LCpl M officiated at the appellant's marriage to LCpl L, another member of their squadron.

About three months after the appellant's nuptials, he and his wife began to have problems. LCpl M invited the appellant to move into his on-base residence with him and his wife, SM. Shortly after the appellant moved in, LCpl M deployed for a training exercise. While LCpl M was gone, SM celebrated her nineteenth birthday by holding a party at their residence. By the end of the night, the appellant shared his prescription medication, Lortab, a Schedule III substance, with SM and the two ended up having consensual sexual intercourse. About a week after this liaison, while LCpl M was working on the

---

1. Although not assigned as error, we note that the convening authority's action seeks on its face to execute the bad-conduct discharge. While the staff judge advocate's recommendation noted that the bad-conduct discharge could not be executed, the action purports to do so. This lan-

guage is a legal nullity as a bad-conduct discharge may not be executed until completion of appellate review. Art. 71, UCMJ, 10 U.S.C. § 871; *United States v. Bailey*, 68 M.J. 409 (C.A.A.F.2009).

night shift, the appellant and SM had sexual intercourse once again.

In March 2010, the appellant reconnected with an on-again, off-again girlfriend, Ms. W, and maintained regular contact with her via phone text messaging, emails, and telephone calls. Approximately one month after his marriage to LCpl L, the appellant met up with Ms. W and had consensual sexual intercourse with her.

### Discussion

The appellant was charged with adultery in violation of Article 134, UCMJ. There are two elements to Article 134 offenses: 1) the accused did or failed to do certain acts, and 2) under the circumstances, the accused's conduct was either: a) prejudicial to good order and discipline in the armed forces; b) of a nature to bring discredit upon the armed forces; or c) a noncapital crime or offense. In the appellant's case, both specifications alleged the appellant was a married man who wrongfully had sexual intercourse with a woman not his wife; neither specification alleged this conduct was prejudicial to good order and discipline, service discrediting, or a noncapital crime or offense.[2] The appellant's sole assigned error contends that both specifications for adultery fail to state an offense due to the Government's failure to allege the second element of the offense.

In an opinion issued on 30 August 2011, this court overturned the appellant's convictions, citing *United States v. Fosler*, 70 M.J. 225 (C.A.A.F.2011). *See United States v.*

*Lonsford*, No. 201100022, unpublished op. (N.M.Ct.Crim.App. 30 Aug. 2011) (per curiam). We determined that, pursuant to *Fosler*, an adultery specification under Article 134 that did not include the terminal element failed to state an offense. Pursuant to our published decision in *United States v. Hackler*, 70 M.J. 624 (N.M.Ct.Crim.App. 2011), we now vacate our prior decision and affirm the findings and sentence as approved by the convening authority.

*Hackler* outlines a fundamental difference between those appellants who advance an objection at trial averring that a specification fails to state an offense because it does not allege the terminal element and those who do not. For appellants who object at trial, "we review [the specification] by construing its wording narrowly, adhering closely to the plain text." *Id.* at 626. However, "[w]here the specification was not challenged at trial, we liberally review the specification to determine if a reasonable construction exists that alleges all elements either explicitly or by necessary implication." *Id.* In other words, "failure to timely challenge a specification will prompt reviewing courts to invest the specifications with greater tolerance than would otherwise be acceptable." *Id.* at 629 (Reismeier, C.J., concurring). The question presented is whether "the specification is . . . so defective that it 'cannot within reason be construed to charge a crime.'" *United States v. Watkins*, 21 M.J. 208, 210 (C.M.A. 1986) (citation omitted).[3]

---

**2.** Specification 1 states that that the appellant, "on active duty, a married man, did, at or near Marine Corps Air Station Beaufort, South Carolina, on divers occasions, on or about 17 July 2009 through 31 July 2009, wrongfully have sexual intercourse with Mrs. [M], a woman not his wife." Specification 2 provides that the appellant, "on active duty, a married man, did, at or near Alachua, FL, on or about April 2010, wrongfully have sexual intercourse with Ms. [W], a woman not his wife."

**3.** Following the recent Supreme Court decision in *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), Federal circuits are now nearly uniform in applying a plain error standard to claims of a defective indictment first raised on appeal, regardless of the appellant's plea. *See United States v. Thomas*, 669 F.3d 421, 424–25 (4th Cir.2012); *United States v. Rendel-*

*man*, 641 F.3d 36, 46–47 (4th Cir.2011); *United States v. Thian Teh*, 535 F.3d 511, 516–18 (6th Cir.2008); *United States v. Barrett*, 496 F.3d 1079, 1091 (10th Cir.2007); *United States v. Sinks*, 473 F.3d 1315, 1320–21 (10th Cir.2007); *United States v. McGilberry*, 480 F.3d 326, 329–31 (5th Cir.2007); *United States v. Hoover*, 467 F.3d 496, 498–500 (5th Cir.2006); *United States v. Gillon*, 348 F.3d 755, 757–58 (8th Cir.2003); *United States v. Blade*, 336 F.3d 754, 757 (8th Cir.2003); *United States v. Doe*, 297 F.3d 76, 81–88 (2d Cir.2002); *United States v. Carr*, 303 F.3d 539, 542–44 (4th Cir.2002); *United States v. Valensia*, 299 F.3d 1068, 1075–77 (9th Cir.2002).

In *Cotton*, the Supreme Court addressed a post-trial challenge to an indictment where an element triggering a sentence escalator was not charged. Noting that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), such a defect would be fatal, the

We agree with both the dissent and the appellant that to avoid legal error, a specification must, either explicitly or by necessary implication, allege all of the elements of an offense. However, as we stated in *Hackler*, the presence of error is only the beginning of the analysis where there has been no objection as to the form of the charge at trial. Where, as here, an appellant has failed to object to the legal sufficiency of a specification at trial, where the instructions covering each element have been properly given to the members, and where we can discern no indication of surprise or lack of actual notice, the question is whether we can, within reason, determine whether the specification charges a crime. Where it is clear that it charges a crime, and where it is clear that an appellant has suffered no prejudice in his preparation for or presentation of evidence at trial, we will not reverse a conviction because the form of the specification deviated from perfect. To determine otherwise would reduce an appellant's challenge to the form of a charge at trial to a nullity.[4]

In this case, the appellant did not object at trial. Although both specifications of the charge fall under Article 134, UCMJ, and allege adultery as in *Fosler*, the specifications allege the crime. The record contains no indication the appellant was surprised, or misled, or unprepared to address the elements. The crime alleged was articulated as adultery, and, when read liberally, the specifications necessarily imply both prejudice to good order and discipline and conduct of a nature to bring discredit upon the armed forces.

## Conclusion

Viewed under the *Hackler* lens, the appellant's actions necessarily imply the terminal element required pursuant to *Watkins* and *Fosler*. As such, we vacate our prior decision in this case and affirm the findings and sentence as approved by the convening authority.

Chief Judge REISMEIER, Senior Judge CARBERRY, Judge PAYTON–O'BRIEN, Judge WARD, and Judge MODZELEWSKI concur.

Supreme Court then focused on the timing of the challenge. In overruling past precedent, the Court held that defects in indictments do not deprive the court of jurisdiction and therefore do not rise to a jurisdictional defect. *Cotton*, 535 U.S. at 631, 122 S.Ct. 1781. The Court then applied the plain error test under FED. R.CRIM.P. 52(b) and after finding that the error was both and error and plain, found that even if the third part was met, i.e. that the error affected a substantial right; the error "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 632–33, 122 S.Ct. 1781. The Court based this determination on the fact that the evidence of the omitted element was both "overwhelming" and "essentially uncontroverted". *Id.* at 633, 122 S.Ct. 1781. Aside from the presence of "overwhelming" evidence on the missing element cited in *Cotton, see McGilberry*, 480 F.3d at 329–31; *Sinks*, 473 F.3d at 1320–21; *Carr*, 303 F.3d at 542–44, Federal circuit courts have focused on two other issues in analyzing plain error—notice and protection from re-prosecution. *Thomas*, 669 F.3d at 424–25; *United States v. Washington*, 653 F.3d 1251, 1257–61 (10th Cir.2011); *Hoover*, 467 F.3d at 498–500.

4. We likewise reject the dissent's view that a plea of not guilty alone preserves this issue for in the same manner as an explicit challenge at trial. Were that true, appellate standards covering plain error and waiver would likewise be reduced to a nullity. Calling the Government to

prove its case, if it can, by legal and competent evidence, beyond a reasonable doubt, no more preserves a challenge to the legal sufficiency of a specification than it preserves an error in admitting evidence, preserves a defect in a pretrial investigation, or a non-jurisdictional defect in referral. If a failure to allege the elements is indeed a jurisdictional defect, there would have been no authority for a court to affirm the conviction in *Watkins*. Because that defect was not jurisdictional in nature, we will use the normative standard involved in a plain error analysis: prejudice. Likewise, we cannot agree with the dissent's view that the plea of an accused is dispositive. If, as in *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) and *Fosler*, the analysis was truly driven by a concern that "the government [was] 'able to request an instruction on an offense whose elements were not charged in the indictment,'" the concern regarding elements would not be lessened merely because an accused pleaded guilty to an "uncharged" offense and the military judge supplied the unplead element during the providence inquiry. The legal analysis employed by the court either finds a sufficient allegation within a specification or it does not. The plea of an accused, and his following admissions pursuant to judicial inquiry, do not "cure" a legally defective specification. Assigning the watershed moment to the plea rather than the challenge appears to add nothing in and of itself to the question of whether there was notice, or whether the defect in the pleading was prejudicial.

PERLAK, Senior Judge, filed an opinion dissenting joined by Judge BEAL:

I respectfully dissent for the reasons initially laid out in my separate opinion in *United States v. Hackler*, 70 M.J. 624 (N.M.Ct. Crim.App.2011), expanded in my separate opinion in *United States v. Redd*, No. 201000682, 2011 WL 6938430, 2011 LEXIS 413 (N.M.Ct.Crim.App. 29 Dec. 2011) (addressing the specific context of a not guilty plea), and as further developed herein.

The Court of Appeals for the Armed Forces, in capturing an essential holding by the United States Supreme Court in *Schmuck v. United States*, 489 U.S. 705, 718, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), stated in *United States v. Fosler*, 70 M.J. 225, 228 (C.A.A.F.2011), the following: "... the accused's constitutional right to notice 'would be placed in jeopardy' if the government were 'able to request an instruction on an offense whose elements were not charged in the indictment.'"

Keying off *Fosler*, the majority appropriately focuses its efforts upon the concept of notice, as developed in analogous lesser included offense cases. They then apply a liberal reading of the Article 134 specifications in this case. However, the reading adopted is so liberal as to lose sight of the fact that the various possible terminal elements under Article 134 are "three distinct and separate parts." *See United States v. Frantz*, 7 C.M.R. 37, 39, 1953 WL 1509 (C.M.A.1953). The plain wording of the specifications at issue in this case does not necessarily imply any distinct terminal element. These specifications, while entirely typical pre-*Fosler*, cannot survive the requirements of RULE FOR COURTS-MARTIAL 307(c)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.) or appellate review, absent some judicial construct which serves to insert the terminal element. *See, e.g., United States v. Mayo*, 12 M.J. 286, 293–4 (C.M.A.1982), *overruled in part by Fosler*, 70 M.J. at 225.

Nonetheless, the majority concludes that any procedural defects were satisfactorily cured on the record through actions by the military judge, members, and various failures to object by the appellant. However, none of these putative failures would have been contemplated in the context of the Article 134 jurisprudence pre-*Fosler*. *See id.* While warning of various dangers, the majority introduces greater dangers in reaching its holding, folding not guilty pleas into the mix with guilty pleas for treatment in the *Hackler* analytical framework.

However, military jurisprudence regarding specifications which fail to state an offense must also be considered in this analysis. In *United States v. King*, 34 M.J. 95, 97 (C.M.A. 1992), specifically regarding the Article 134 offense of adultery, likewise present in this case, the court found that, "in omitting an allegation of marriage from the specification, the Government omitted the quintessential hallmark of adultery; and the specification as drafted simply does not state an offense." (Citations omitted). Notably, King contested the specification at trial but was nonetheless convicted of it. The essence of offenses under Article 134, recognize the fact that certain conduct, contextualized specifically to the military, whether or not a crime in the civilian world, is a military crime. Applying the *King* analysis, post-*Fosler*, to the specifications in this case, in failing to allege any terminal element, they thereby fail to transform the disorder of adultery alleged, into a military crime, for want of the military-nexus terminal element. With the terminal element missing, akin to the missing element holding in *King*, "the essence of criminality was not even implied." *Id.* at 97. The result in this case is the same as in *King*—the failure to state an offense.

A critical distinction must be made based on the nature of the plea entered. In a typical unconditional guilty plea situation, the accused is supplied with the missing element and key definitions pursuant to *United States v. Care*, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969), and, mindful of the missing element, persists in his plea. If he raises the matter first on appeal, he necessarily receives appellate review based on a record which likely does not establish prejudice based upon a failure of notice. The "cure" to the missing element is provided by the accused himself, on the record. This is a situa-

tion that this court, per the *Watkins* analysis adopted by the majority, can affirm.

However, in a not guilty plea situation, the accused is presumed innocent. Through his plea, he contests the charge with a general denial of culpability. Per *Fosler*, the specifications in this case do not allege the terminal element expressly or by necessary implication. Combining the rationale of *King* and *Fosler*, these specifications fail to state an offense. The appellant is therefore pleading not guilty to something that is not, on its face, a military crime. The majority intones that he must do more. They conclude that the court-martial proceedings from the point of entering pleas forward, do not introduce prejudice. But axiomatically, one cannot be convicted of something that is not a crime. Notice or no notice, the defective Article 134 specifications in this case only morph into viable military crimes upon instructions and definitions on an element not plead, supplied by the military judge. Any putative "cure" to the face of the specification is supplied by the members. Post-*Fosler*, we cannot affirm these Article 134 offenses. Doing so ignores the very essence of *Schmuck*, namely, the appellant standing convicted following instructions on elements not charged. Post-*Fosler*, this appellant now stands, contrary to his pleas, convicted of words which fail to state an offense, fail to imply any discrete terminal element on their face, with the conviction perfected by the insertion of the missing element by the military judge and a guilty finding on that element by the members. Meanwhile, the specification before us, on its face, continues to fail to state an offense. *See generally King.* Such an outcome, being incorrect as a matter of law, is something we cannot affirm. Art. 66(c), UCMJ, 10 U.S.C. § 866(c).

Consistent with the panel opinion of 11 August 2011, I would set aside the Article 134 offenses under Charge II, per the Court of Appeals for the Armed Forces' holding in *Fosler*. I would affirm the remaining findings and set aside the sentence and return the record to the Judge Advocate General for remand to an appropriate convening authority with a rehearing authorized on the sentence.