**UNITED STATES of America**

v.

**George W. WARREN, Master–at–Arms Second Class (E–5), U.S. Navy.**

**NMCCA 201100048.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 27 Oct. 2010.

29 Feb. 2012.

For Appellant: Maj Jeffrey Liebenguth, USMC.

For Appellee: LT Ritesh Srivastava, JAGC, USN.

Before the Court En Banc.

WARD, J., delivered the opinion of the court in which REISMEIER, C.J., CARBERRY, S.J., BEAL, J., and MODZELEWSKI, J., concur. PERLAK, S.J., filed an opinion dissenting in part and concurring in part joined by MAKSYM, S.J., and PAYTON–O'BRIEN, J.

## PUBLISHED OPINION OF THE COURT

WARD, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of reckless operation of a motor vehicle, involuntary manslaughter, and fleeing the scene of an accident, in violation of Articles 111, 119, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 911, 919, and 934. The military judge sentenced him to eight years confinement, reduction to pay grade E–1, forfeiture of all pay and allowances, and a dishonorable discharge from the United States Navy. Following the long and tortured post-trial review process detailed below, we find that the convening authority (CA) in his action dated 29 July 2011 approved the sentence as adjudged and, pursuant to the terms of a pretrial agreement (PTA), suspended all confinement in excess of twenty-four months for the period of confinement served plus six months thereafter.

The appellant submitted three assignments of error: (1) that the first staff judge advocate's recommendation (SJAR) improperly advised the CA that the sentence must be ordered executed;[1] (2) that Specification 1 of Charge III, alleging a violation of Article 134, failed to state an offense because it did

---

1. The SJAR read as follows: "You have to execute this punishment except for the sentence except for the part of the sentence extending to dishonorable discharge."

not allege the terminal element; and (3) that the approved sentence was inappropriately severe.[2] We specified an additional issue in reference to the CA's action of 13 May 2011.[3] After carefully considering the record of trial, the parties' pleadings and oral argument,[4] we resolve the assignments of error and assigned issue against the appellant. We conclude that the findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 856(a), 866(c).

## Facts

A master-at-arms second class at Naval Support Activity Bahrain, the appellant was driving his black 2006 BMW 325i to his off base residence in Manama, Bahrain after a night of drinking. Prosecution Exhibit 1, Stipulation of Fact, at 1–2. Driving at approximately fifty miles per hour in the left lane of a three-lane highway, he saw a passenger van and sedan stopped ahead due to a minor traffic accident. The stopped vehicles were located in the middle and right lanes. *Id.* at 2–3. Two passengers had exited one of the stopped vehicles and were standing nearby. *Id.* As the appellant drew near, his vehicle drifted to the right, straddling both the left and center lanes. *Id.* at 3. Even though a taxicab directly ahead in the left lane began to slow down, the appellant, attentive instead to his iPod, continued at the same speed despite the clearly visible accident scene ahead. *Id.*

The appellant's BMW crashed into the taxicab on the left and sideswiped the van on the right. This caused the taxicab to spin out into a nearby traffic light. *Id.* Tragically, the appellant's BMW also struck the two passengers standing nearby. The first passenger was crushed between the BMW and the van and later died as a result of his injuries. *Id.* at 2–4. The second was flung

onto the hood of the appellant's car, resulting in the later amputation of his right leg below the knee. *Id.* at 3–4. The taxicab driver also sustained injuries as a result of the crash. *Id.* at 4. The force of the impact caused the airbags in the appellant's BMW to deploy. *Id.* After coming to a complete stop, the appellant sat in his car for about five minutes. He then gathered various documents, such as proof of insurance and registration, and fled the scene on foot. *Id.* at 5.

Pursuant to a PTA, the appellant pleaded guilty to, inter alia, fleeing the scene of an accident. During the providence inquiry, the military judge explained the elements of the Article 134 offense, including the terminal element that the conduct was prejudicial to the good order and discipline of the armed forces or of a nature to bring discredit upon the armed forces. Record at 116–17. There was a substantial colloquy between the military judge and the appellant regarding how a service member leaving the scene of a major motor vehicle accident could bring discredit upon the United States Navy in the eyes of the local Bahraini nationals. *Id.* at 137–40. The appellant agreed that his actions could have lowered the esteem of the United States Navy in the eyes of the Bahraini people. *Id.* at 140.

## Post–Trial Processing Errors

The first assigned error from the appellant concerned the directive language in the SJAR of 3 January 2011. Appellant's Brief of 16 Mar 2011 at 4. For relief, the appellant requested a remand for a new SJAR and CA's action.[5] *Id.* at 7. The Government then filed a Motion for Relief from Post–Trial Processing Error asking for identical relief. This court granted the Motion and the record was remanded to the CA for new post-trial processing. The record was returned with a second SJAR and CA's action, and was dock-

---

2. The third assignment of error was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

3. We specified the following issue: "Did the 13 May 2011 convening authority's action contain clear and unambiguous language approving or disapproving a dishonorable discharge in light of *United States v. Wilson*, 65 M.J. 140 (C.A.A.F. 2007)?"

4. On 2 February 2012, Senior Judge Maksym, Senior Judge Perlak, and Judge Ward heard oral argument on the court specified issue.

5. In his first CA's Action dated 18 January 2011, the CA approved the sentence as adjudged.

eted with the Court on 25 May 2011. On 26 May 2011, the Government requested a second remand for a new post-trial action citing ambiguity in the second CA's action. The appellant consented to the Government's Motion. This court granted the Motion and the record was remanded for a second time. The record was re-docketed with a third SJAR and CA's action on 19 August 2011.[6] It is the language of the second CA's action that led to this court's specified issue.

 A CA's action reflecting an approved sentence must be clear and unambiguous. *United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F.2006). The approval or disapproval of all or part of an adjudged sentence must be explicitly stated. RULE FOR COURTS–MARTIAL 1107(d)(1), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2008 ed.). Ambiguity occurs when the language of the action is susceptible to two or more meanings, *United States v. Loft*, 10 M.J. 266, 268 (C.M.A.1981), and if the action is ambiguous, the case may be remanded for clarification or issuance of a corrected action. R.C.M. 1107(g); *Politte*, 63 M.J. at 26. But "when the plain language of the convening authority's action is facially complete and unambiguous, its meaning must be given effect." *United States v. Wilson*, 65 M.J. 140, 141 (C.A.A.F.2007). In evaluating the action for ambiguity, we are limited to the consideration of the four corners of the action and may not look elsewhere to matters outside that document. *See United States v. Burch*, 67 M.J. 32, 33 (C.A.A.F.2008) (holding a determination of ambiguity cannot rely on circumstances not reflected in the action).

 In the instant case, the convening authority's action states, in relevant part, the following:

> In the [GCM] case of [MA2] George W. Warren, U.S. Navy, I approve the sentence of reduction in grade to E–1 and total forfeiture of pay and allowances. In accordance with the Pre–Trial agreement, I approve 24 months of confinement and all adjudged confinement in excess of 24 months will be suspended for the period of confinement served plus 6 months thereafter, at which time, unless sooner vacated, the suspended portion will be remitted. *All approved punishment which has not been suspended, except for the part of the sentence extending to the dishonorable discharge, will executed.*

Amended General Court–Martial Order 1–10 of 13 May 2011 at 2 (emphasis added).

The first sentence explicitly approves the adjudged reduction and forfeitures. The second sentence explicitly approves only a portion of the adjudged confinement and then inexplicably attempts to suspend the remaining adjudged confinement. In the third sentence, the action explicitly executes all approved punishment not suspended except for the dishonorable discharge. What is missing is an explicit approval or disapproval of the dishonorable discharge.

In *Wilson*, the Court of Appeals for the Armed Forces (CAAF) found that by specifically excepting a dishonorable discharge from approval[7] the action contained "facially clear and unambiguous language .... [that] the dishonorable discharge was not approved." *Wilson*, 65 M.J. at 142. The appellant, relying on *Wilson*, argues that the absence of an explicit approval of the dishonorable discharge, combined with an explicit approval of all or the remainder of the adjudged sentence, results in the dishonorable discharge being not approved, if not disapproved.[8] The Government argues that the third sentence, with its reference to the dishonorable discharge, suggests a contrary interpretation, thereby creating an ambiguity.

---

**6.** This third SJAR is dated 7 July 2011 and the third CA's action is dated 29 July 2011.

**7.** In *Wilson*, the action stated in relevant part: "... that part of the sentence extending to confinement in excess of 3 years and 3 months is disapproved. The remainder of the sentence, *with the exception of the Dishonorable Discharge, is approved and will be executed.*" *Wilson*, 65 M.J. at 140–41 (emphasis added).

**8.** R.C.M. 1107(d) requires that the disapproval or approval of a sentence be explicitly stated. R.C.M. 1107(f)(4)(A) states that if only part of a sentence is approved, the action shall state which parts are approved. We see no qualitative difference between a sentence that is explicitly "disapproved" or explicitly "not approved"; the result is the same.

We find this case is distinguishable from *Wilson*. Unlike the action in *Wilson*, here there is no reference at all to the discharge, be it either approval or disapproval. In this regard, we find the action to be incomplete. *See Wilson*, at 142–43 (Effron, C.J., dissenting) (noting an action is incomplete under R.C.M. 1107(d)(1) where it fails to explicitly approve or disapprove part of sentence); *United States v. Fillinger*, 69 M.J. 426 (C.A.A.F.2010) (summary disposition) (holding action that failed to approve or disapprove sentence, but ordered parts of the sentence not to include the discharge executed, was incomplete and ambiguous).

But our analysis does not end there. Even if we found some traction with the appellant's argument, once all three sentences are considered, any consonance with *Wilson* quickly gives way to ambiguity. The third sentence references the discharge within the context of execution of the sentence, a requirement of any action pursuant to R.C.M. 1107(f)(4)(B).[9] This explicit reference indicates an intent or assumption that the discharge is approved. To find otherwise would render this reference "meaningless in the absence of approval of that portion of the adjudged sentence." *Loft*, 10 M.J. at 267–68. The plain meaning of the third sentence is to remove the discharge from the execution order, not from approval as in *Wilson*. There would be no reason to mention the discharge in this third sentence if it had been disapproved, or "not approved."

The appellant would have us ignore this third sentence and limit our analysis to the first and second sentences, thereby finding no approved discharge. However, this third sentence with its execution language is a required part of any action and, pursuant to *Wilson*, must be considered within the "four corners" of the action for us to identify any ambiguity. We cannot rely on one part of the action, to the exclusion of another in conflict with the first, and find the action as a whole is "facially clear and unambiguous".[10]

Consequently, we find that this court did not err in its 3 June 2001 Order setting aside the 13 May 2011 CA's action.

## Failure to State an Offense

■ The appellant's next assigned error is that Specification 1 of Charge III fails to state an offense because it does not expressly allege the terminal element of Article 134. We review *de novo* whether a specification states an offense. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F.2006). To state an offense, a specification must allege "every element [of the offense] either expressly or by necessary implication, so as to give the accused notice and protect him against double jeopardy." *United States v. Dear*, 40 M.J. 196, 197 (C.M.A.1994) (citations and internal quotation marks omitted). Specifications that allege violations of the General Article must include the terminal element either expressly or by necessary implication. *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F.2011).

■ The appellant's case is significantly distinguishable from *Fosler* because: 1) the appellant did not challenge the adequacy of the specification at trial; 2) the appellant pled guilty to this specification; 3) the military judge explained and ensured that the appellant understood the terminal element; 4) the appellant agreed with the explanation and explained how his conduct was of a nature to bring discredit upon the armed forces; and 5) the appellant stipulated to the same.[11]

---

9. The CA must state in the action whether an approved sentence is to be executed or whether execution of all or any part of the sentence is to be suspended.

10. To the contrary, we previously found an internal inconsistency within an action that omitted any explicit approval of an adjudged discharge, yet referenced the discharge in the execution portion of the action. *See United States v. Rivas-perez*, No. 200800524, 2009 WL 3125476, at n. 1, 2009 CCA LEXIS 348, at n. 1, unpublished op. (N.M.Ct.Crim.App. 30 Sep. 2009). The CAAF

has taken a similar approach. *See United States v. Shumate*, 67 M.J. 174 (C.A:A.F.2008) (summary disposition) (holding action was ambiguous where adjudged forfeitures were omitted in the approval portion of an action but referenced in the execution portion).

11. In the last paragraph of the Stipulation, the appellant agrees that "[t]he act of fleeing the scene of a crash in a host country, where foreign and local nationals were involved, was of a nature to bring discredit upon the armed forces. The accused (sic) actions could have or actually

Accordingly, we resolve the assigned error against the appellant. *United States v. Hackler,* 70 M.J. 624 (N.M.Ct.Crim.App. 2011).

## Sentence Appropriateness

Last, The appellant asserts, pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), that the approved sentence, which included eight years confinement[12] and a dishonorable discharge, "is inappropriately severe" because he crashed into two vehicles that were part of a preexisting accident and the trial counsel, defense counsel, military judge, and CA were prejudiced against him. We disagree. We do not find the sentence adjudged or approved inappropriately severe. Further, we find no evidence of any prejudice against the appellant from the CA, military judge, trial counsel, or defense counsel.

We have a duty under Article 66(c), UCMJ, to independently review the sentence of each case within our jurisdiction and we may only approve that part of a sentence which we find should be approved. *United States v. Baier,* 60 M.J. 382, 383–84 (C.A.A.F.2005). Our determination of sentence appropriateness under Article 66(c), UCMJ, requires us to analyze the record as a whole to ensure that justice is done and that the accused receives the punishment he deserves. *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A.1988). In making this important assessment, we consider the nature and seriousness of the offenses as well as the character of the offender. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A. 1982).

■ The gravamen of these offenses was a motor vehicle accident caused by the appellant that resulted in serious injuries to one person, a lifelong disability to a second person, and the death of a twenty-seven-year-old married father with two children. The appellant drove his car in a reckless and wanton manner by driving after consuming several alcoholic beverages and looking down from the road to adjust his iPod while approaching a pre-existing motor vehicle accident. Rather than alerting to the imminent danger as the nearby taxicab driver did, the appellant instead drifted to the right until his car straddled both the left and center lanes. He continued at the same speed, never braking, until he collided with the two stopped vehicles. One victim suffered a crush injury that resulted in his leg being amputated below the knee. Another victim was knocked unconscious from the impact and suffered whiplash injuries. The third victim suffered such severe injuries that he passed away after receiving twenty units of blood. After causing this tragedy, the appellant then fled the scene without rendering aid to any of the three injured persons or making his identity known.

After carefully considering the entire record of trial, the nature and seriousness of these offenses, the matters presented by the appellant in extenuation and mitigation, and the appellant's military service, we find the sentence to be appropriate for this offender and the offenses committed. Granting additional sentence relief at this point would be engaging in clemency, a prerogative reserved for the convening authority, and we decline to do so. *See Healy,* 26 M.J. at 395–96.

## Conclusion

The findings and sentence as approved by the CA on 29 July 2011 are affirmed.

Chief Judge REISMEIER, Senior Judge CARBERRY, Judge BEAL, and Judge MODZELEWSKI concur.

PERLAK, Senior Judge, joined by MAKSYM, S.J. and PAYTON–O'BRIEN, J. (concurring in part and dissenting in part):

Today the court decides more than the appeal before us. We concomitantly decide to continue a now three-decade-old conversation with the Court of Appeals for the Armed Forces (CAAF), dating back to *United States v. Lower,* 10 M.J. 263 (C.M.A.1981) and *United States v. Loft,* 10 M.J. 266 (C.M.A.1981), regarding the efficacy and treatment of convening authority's actions (CAA) under review at this court.

did lower the public's esteem of the armed forces." PE 1 at 6.

12. Pursuant to the PTA, the CA suspended all confinement in excess of twenty-four months.

Our half of the conversation, again embraced by the majority, has been consistent. In situations where the convening authority (CA) fails to approve a punitive discharge, this court has taken remedial action, perhaps guided by its own sound intuition about what the CA intended, yet seemingly rejecting other possibilities, such as the prospect that clemency was granted. But in doing so, we are proceeding in a manner dismissive of the Article 60(c)(1), UCMJ, 10 U.S.C. § 860(c)(1), prerogatives belonging to the CA, and perhaps exceeding our jurisdictional limitations pursuant to Article 66(c).

In the instant case, it notably took three attempts to produce the post-trial processing approved today by the majority. The majority affirms a sentence that includes a punitive discharge and a substantive nuance to the approved confinement which was not before us based on the CAA of 13 May 2011. In order to do so, the majority makes a finding of ambiguity, achieved by the application of a definition far removed from, " 'capable of being understood in two or more possible senses.' " *Loft*, 10 M.J. at 268 (quoting Webster's New Collegiate Dictionary, p. 36 (1975 ed.)).

The other half of the conversation from the CAAF has not remained the same. The CAAF has given us increasingly stringent guidance on just how far Courts of Criminal Appeals should go in attempting to divine discharges where there are none, en route to directing action which resurrects them.

In *United States v. Politte*, 63 M.J. 24 (C.A.A.F.2006), the court specified the issue and reached a finding of ambiguity based on indicia not found in the CAA itself, (a concept first set forth in *Loft* ). But, in a fractured opinion, the plurality also provided clear guidance on how readily this situation could be avoided. *Politte*, 63 M.J. at 26, n. 11. The military justice community was reminded that, "the CA must exercise care in drafting the action." *Id.*

The care as cautioned in *Politte* was once again not forthcoming, and the following year, the conversation with the CAAF became seemingly more of a one-way affair, with the decision in *United States v. Wilson*, 65 M.J. 140 (C.A.A.F.2007). The guidance in *Politte*'s footnote 11 was again referenced, this time in the text of the opinion. The CAAF found that this court had erred in affirming a punitive discharge, which, in the non-standard wording of that case, was excepted from the approval and execution language. The analysis and holding in *Wilson* control the instant case.

In the second CAA in this case, dated 13 May 2011, the CA, speaking in the first person and with particularity, approves certain aspects of the adjudged sentence—only twenty-four months of the adjudged confinement, reduction, and forfeitures. Such an action complies with RULE FOR COURTS–MARTIAL 1107(f)(4)(A), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2008 ed.), which provides, "[t]he action shall state whether the sentence adjudged by the court-martial is approved. If only part of the sentence is approved, the action shall state which parts are approved." The CA's only notable qualification was limiting his approval of the confinement portion, consistent with the terms of a pretrial agreement (PTA).

In the execution portion, the CA orders all of his approved punishments executed. Per the plain text, the only approved punishments at this point are the confinement, reduction, and forfeitures. The CA then excepts from his execution language something he has not approved and cannot order executed-a punitive discharge. Art. 71, UCMJ, 10 U.S.C. § 871; *See e.g., United States v. Bailey*, 68 M.J. 409 (C.A.A.F.2009); *United States v. Tarniewicz*, 70 M.J. 543 (N.M.Ct. Crim.App.2011).

Without the majority's predicate finding of ambiguity in the 13 May 2011 CAA, we would not have the third CAA which the court affirms today. To make that predicate finding, the following rationale is employed: a portion of the adjudged sentence which is not approved, and which is specifically excepted from execution, is deemed by the majority to invite the conclusion that the CA intended to approve the punitive discharge. Such an analysis cannot be squared with *Wilson* or be effectively distinguished from it. In the conspicuous absence of an approved punitive discharge in the 13 May 2011

action, I would exercise jurisdiction on this appeal based exclusively on the length of the confinement portion of the approved sentence.

We erred in our 3 June 2011 Order setting aside the 13 May 2011 CAA as ambiguous. The appellant's first assigned error has been rectified. I concur in the majority's treatment of the second assigned error. The specified issue, resolved in the appellant's favor above, renders his third assigned error moot. On the record before us, I join the majority in affirming the findings of the court-martial and only so much of the sentence as the CA approved on 13 May 2011, which extends to confinement for twenty-four months, total forfeitures, and reduction to pay grade E–1.