Judge STUCKY delivered the opinion of the Court.
To establish a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), the government must prove beyond a reasonable doubt both that the accused engaged in certain conduct and that the conduct satisfied at least one of three listed criteria. The latter element is commonly referred to as the “terminal element” of Article 134 and the government must prove that at least one of the article’s three clauses has been met: that the accused’s conduct was (1) “to the prejudice of good order and discipline,” (2) “of a nature to bring discredit upon the armed forces,” or (3) a “erime[ or] offense[ ] not capital.” Article 134. We hold that the Government failed to allege at least one of the three clauses either expressly or by necessary implication and that the charge and specification therefore fail to state an offense under Article 134.
I.
Contrary to his pleas, Appellant was convicted of adultery in violation of Article 134. On September 21, 2009, he was sentenced to a bad-conduct discharge, confinement for thirty days, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. On February 5, 2010, the convening authority approved the sentence and, with the exception of the bad-conduct discharge, ordered it executed. On October 28, 2010, the United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the findings and the sentence. United States v. Fosler, 69 M.J. 669, 678 (N.-M.Ct.Crim.App.2010). On February 9, 2011, this Court granted review to determine- whether the charge and specification leading to Appellant’s conviction for adultery in violation of Article 134 stated an offense.
II.
While a drill instructor at the Naval Junior Reserve Officer Training Corps (NJROTC) in Rota, Spain, Appellant admitted to having sexual intercourse on December 26, 2007, with SK, a sixteen-year-old high school student enrolled in NJROTC, the daughter of *227 an active duty Navy servieemember. The evidence demonstrated that other drill instructors and NJROTC students were aware of the sexual relations between Appellant and SK. SK claimed that the intercourse was not consensual.
Appellant was charged with rape and aggravated sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006), and with adultery in violation of Article 134. Appellant was ultimately acquitted of the Article 120 charges. The charge sheet described the Article 134 allegation, the offense of conviction, as follows:
Charge II: VIOLATION OF THE UCMJ, ARTICLE 134
Specification: In that Lance Corporal James N. Fosler, U.S. Marine Corps, Marine Corps Security Force Regiment, on active duty, a married man, did, at or near Naval Station, Rota, Spain, on or about 26 December 2007, ... wrongfully hav[e] sexual intercourse with [SK], a woman not his wife.
After the end of the Government’s case-in-chief, trial defense counsel moved to dismiss the specification both under Rule for Courts-Martial (R.C.M.) 917 (motion for a finding of not guilty due to insufficient evidence), and because the Government “failed to allege [the terminal element] in the charge sheet,” and therefore that the charge and specification “fail[ed] to state an offense.” As the CCA noted, this second motion should be “considered as a motion to dismiss under R.C.M. 907.” Fosler, 69 M.J. at 670 n. 1.
The military judge denied both motions. Concerning the motion to dismiss, the military judge stated that “[t]here’s no requirement that the government has to either state [which clause of the terminal element is alleged], or state either of them in the [specification.” During the findings phase, the military judge instructed the members regarding clauses 1 and 2.
III.
Historically, the express allegation of the terminal element of Article 134 has not been viewed as necessary. The origin of the modern Article 134, the general article, can be traced back to before the founding of the nation — namely, the first American Articles of War in 1775.[1] William Winthrop, Military Law and Precedents 720 (2d ed. Government Printing Office 1920) (1895). Two points can be made about jurisprudence under the general article. First, “ ‘conduct to the prejudice of good order and military discipline’ ”— and when it was added in 1916, “conduct of a nature to bring discredit upon the armed forces” — “[was] deemed to be involved in every specific military crime,” and was therefore available as a lesser included offense (LIO) of the enumerated articles of the Articles of War and later the UCMJ. See United States v. Foster, 40 M.J. 140, 143 (C.M.A.1994), overruled in part by United States v. Miller, 67 M.J. 385, 389 (C.A.A.F.2009); Winthrop, supra at 109. As a consequence, an accused could be convicted under Article 134 as an LIO of nearly any offense charged. As the charged offense was an enumerated article and therefore did not contain the terminal element, its explicit allegation must have been considered unnecessary. The trier of fact was nonetheless required to find that the terminal element had been proven beyond a reasonable doubt to obtain a conviction under Article 134 as an LIO.
Second, the references relied upon by practitioners did not treat the general article’s terminal element as a requisite component of the charge and specification.[2] To provide guidance to practitioners, both the Manual for Courts-Martial (MCM) and authoritative works such as Colonel Winthrop’s treatise included form charges and specifications for the various articles. See, e.g., Manual for Courts-Martial, United States app. 6c (1951 ed.); Winthrop, supra at 1010-23. This guidance never had the force of law, but *228 was undoubtedly relied upon in everyday practice and generally reflective of the authors’ understanding of the law at the time.
With few exceptions, sample specifications provided for the general article did not indicate that the terminal element should be alleged, though the sample charges often suggested specific reference to the general article. See Winthrop, supra at 1022 (suggesting that the terminal element be listed in the charge, but not in the specification, and without explicit reference to the general article); A Manual for Courts-Martial, United States Army app. 3 at 349-350B (1917 ed.) (addressing the Articles of War of 1916, with the newly enacted predecessor to the modern clause 2, and suggesting that the charge explicitly reference the general article, but that reference to the terminal element was largely unnecessary); A Manual for Courts-Martial, United States Army 254-57 (1928 ed.) (same); MCM app. 6c at 488-95 (1951 ed.) (same, as applied to Article 134 in the newly enacted UCMJ); MCM pt. IV, paras. 60-113 (2005 ed.) (same); MCM pt. IV, paras. 60-113 (2008 ed.) (same).
This Court previously approved of such practices. See United States v. Mayo, 12 M.J. 286, 293-94 (C.M.A.1982); United States v. Marker, 1 C.M.A. 393, 400, 3 C.M.R. 127, 134 (1952) (“[W]e find no reason for the inclusion in the specification of the words ‘conduct of a nature to bring discredit upon the military service.’”); see also United States v. Smith, 39 M.J. 448, 449-51 (C.M.A.1994) (stating that the Court had previously held that a specification did “allege the military offense of obstruction of justice under Article 134” even though it did not expressly allege the terminal element); United States v. Wolfe, 19 M.J. 174, 175-76 & n. 1 (C.M.A.1985) (upholding an Article 134 conviction omitting express reference to the terminal element); United States v. Maze, 21 C.M.A. 260, 45 C.M.R. 34 (1972) (same); United States v. Herndon, 1 C.M.A. 461, 4 C.M.R. 53 (1952) (same).
More recent cases have required a greater degree of specificity in charging. The Supreme Court, addressing the relationship between the charged offense and permissible offenses of conviction, explained in Schmuck v. United States that the accused’s constitutional right to notice “would be placed in jeopardy” if the government were “able to request an instruction on an offense whose elements were not charged in the indictment.” 489 U.S. 705, 718, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). This concern led the Supreme Court to adopt the elements test as the appropriate method of determining whether an offense is an LIO of the charged offense — and therefore available as an offense of conviction. This test requires that “the indictment contain[] the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge.” Id.
In a line of recent eases drawing on Schmuck, we have concluded that the historical practice of implying Article 134’s terminal element in every enumerated offense was no longer permissible. See United States v. McMurrin, 70 M.J. 15, 17 (C.A.A.F.2011); United States v. Girouard, 70 M.J. 5, 9 (C.A.A.F.2011); United States v. Jones, 68 M.J. 465, 468 (C.A.A.F.2010); Miller, 67 M.J. at 388-89; United States v. Medina, 66 M.J. 21, 24-25 (C.A.A.F.2008).
The Court’s holdings in this line of cases— that an accused’s “constitutional rights to notice and to not be convicted of a crime that is not an LIO of the [charged] offense” are violated when an accused is convicted of an Article 134 offense as an LIO of a non-Artiele 134 charged offense, see, e.g., Girouard, 70 M.J. at 10 (citing U.S. Const. amends. V, VI)—call into question the practice of omitting the terminal element from the charge and specification. This is so because not “ ‘all of the elements’ ” of the offense of conviction are “ ‘included in the definition of the offense of which the defendant is charged.’” Id. (emphasis in original) (quoting Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)).
In light of this recent case law, we must determine whether the military judge erred by denying Appellant’s motion to dismiss for failure to state an offense.
*229 IV.
The Constitution protects against conviction of uncharged offenses through the Fifth and Sixth Amendments. See Russell v. United States, 369 U.S. 749, 761, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The rights at issue here include the same rights we addressed in the context of our LIO jurisprudence:
The rights at issue in this case are constitutional in nature. The Fifth Amendment provides that no person shall be “deprived of life, liberty, or property, without due process of law,” U.S. Const, amend. V, and the Sixth Amendment provides that an accused shall “be informed of the nature and cause of the accusation,” U.S. Const, amend. VI.
Girouard, 70 M.J. at 10; see also McMurrin, 70 M.J. at 18-19 (quoting Girouard, 70 M.J. at 10).
Applying these protections, we set aside convictions under Article 134 in the LIO context because the charges and specifications in both cases alleged a violation of an enumerated article and we could not interpret the elements of the enumerated articles to “necessarily include[]” the terminal element. See Article 79, UCMJ, 10 U.S.C. § 879 (2006); see, e.g., Jones, 68 M.J. at 473. We were compelled to reach this result in multiple cases even though we employ “normal principles of statutory construction,” United States v. Alston, 69 M.J. 214, 216 (C.A.A.F.2010) (rejecting a requirement that elements “employ identical statutory language”), because none of the enumerated articles we examined contained elements the ordinary understanding of which could be interpreted to mean or necessarily include the concepts of prejudice to “good order and discipline” or “conduct of a nature to bring discredit upon the armed forces,” Article 134; see Girouard, 70 M.J. at 9.
In the instant case, we are called upon to determine, not whether the terminal element is necessarily included in the elements of the charged offense, but whether it is necessarily implied in the charge and specification. Though the object we must construe is different — elements versus charge and specification — the basic question is the same: using the appropriate interpretive tools, can the relevant statutory or, as here, charging language be interpreted to contain the terminal element such that an Article 134 conviction can be sustained?
The military is a notice pleading jurisdiction. United States v. Sell, 3 C.M.A. 202, 206, 11 C.M.R. 202, 206 (1953). A charge and specification will be found sufficient if they, “first, contain[ ] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.” Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); see also United States v. Resendiz-Ponce, 549 U.S. 102, 108, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007) (citations and quotation marks omitted); United States v. Sutton, 68 M.J. 455, 455 (C.A.A.F.2010); United States v. Crafter, 64 M.J. 209, 211 (C.A.A.F.2006); Sell, 3 C.M.A. at 206, 11 C.M.R. at 206. The rules governing court-martial procedure encompass the notice requirement: “A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.” R.C.M. 307(c)(3).
The requirement to allege every element expressly or by necessary implication ensures that a defendant understands what he must defend against: “[A]lthough the terms Congress chose for [Article 134] are broad, ... what is general is made specific through the language of a given specification. The charge sheet itself gives content to that general language, thus providing the required notice of what an accused must defend against.” Jones, 68 M.J. at 472 (citing Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). Indeed, “[n]o principle of procedural due process is more clearly established than ... notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.” Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948); see also Miller, 67 M.J. at 388.
*230 The three clauses of Article 134 constitute “three distinct and separate parts.” United States v. Frantz, 2 C.M.A. 161, 163, 7 C.M.R. 37, 39 (1953). Violation of one clause does not necessarily lead to a violation of the other clauses. For example, “disorders and neglects to the prejudice of good order and discipline” is not synonymous with “conduct of a nature to bring discredit upon the armed forces,” although some conduct may support conviction under both clauses. This is particularly true of clause 3. See, e.g., United States v. Martinelli, 62 M.J. 52 (C.A.A.F.2005) (detailing significant additional steps required to obtain a conviction under clause 3, as compared with clauses 1 and 2).
An accused must be given notice as to which clause or clauses he must defend against. As we explained in the context of a guilty plea: “[F]or the purposes of Article 134, UCMJ, it is important for the accused to know whether [the offense in question is] a crime or offense not capital under clause 3, a ‘disorder or neglect’ under clause 1, conduct proscribed under clause 2, or all three.” Medina, 66 M.J. at 26. This requirement was based on fair notice. See id. Principles of fair notice require the same in contested cases.
Because the terminal element was not expressly alleged, our task is to determine whether the terminal element was necessarily implied. See R.C.M. 307(c)(3). To do so, we must interpret the text of the charge and specification. We agree with the court below that Resendiz-Ponce does not foreclose the possibility that an element could be implied. See Fosler, 69 M.J. at 675. However, in contested cases, when the charge and specification are first challenged at trial, we read the wording more narrowly and will only adopt interpretations that hew closely to the plain text.[3] Cf. United States v. Watkins, 21 M.J. 208, 209-10 (C.M.A.1986).
The Government argues that the terminal element is implied because the specification alleged adultery, the word “wrongfully” was used, and the charge stated “Article 134.” These facts do not provide a basis, individually or together, to find that the charge and specification necessarily implied the terminal element.
An allegation of adulterous conduct cannot imply the terminal element. Article 134, if properly charged, would be constitutional as applied to Appellant’s adulterous conduct because, as discussed by the Supreme Court in Levy, tradition and custom give notice to servicemembers that adulterous conduct can give rise to a violation of the UCMJ. See 417 U.S. at 746-47, 94 S.Ct. 2547. But this only answers the question of whether adulterous conduct can constitutionally be criminalized under Article 134, not whether the wording of the charge and specification satisfies constitutional requirements. An accused cannot be convicted under Article 134 if the trier of fact determines only that the accused committed adultery; the trier of fact must also determine beyond a reasonable doubt that the terminal element has been satisfied. See Medina, 66 M.J. at 27. Because adultery, standing alone, does not constitute an offense under Article 134, the mere allegation that an accused has engaged in adulterous conduct cannot imply the terminal element.
Likewise, the word “wrongfully” cannot of itself imply the terminal element. “Wrongfully” is a word of criminality and, though our ease law has been at times unclear, see United States v. Choate, 32 M.J. 423, 427 (C.M.A.1991), words of criminality speak to mens rea and the lack of a defense *231 or justification, not to the elements of an offense, see United States v. King, 34 M.J. 95, 97 (C.M.A.1992); United States v. Fleig, 16 C.M.A. 444, 445, 37 C.M.R. 64, 65 (1966). Neither the word “wrongfully” nor similar words of criminality can be read to mean or be defined as, for example, a “disorder[ or] negleet[ ] to the prejudice of good order and discipline.” Therefore, while potentially necessary-depending on the nature of the alleged conduct — such words do not imply the terminal element in the charge and specification.
In a contested case in which Appellant challenged the charge and specification at trial, the inclusion of “Article 134” in the charge does not imply the terminal element. The words “Article 134” do not, by definition, mean prejudicial to “good order and discipline,” “of a nature to bring discredit upon the armed forces,” or a “erime[ or] offense[ ] not capital,” and we are unable to construe the words “Article 134” in the charge we now review to embrace the terminal element. See Resendiz-Ponce, 549 U.S. at 105-07, 127 S.Ct. 782 (explaining, in a contested case in which the accused moved to dismiss the indictment at trial, that an overt act is and has been necessary to and part of the definition of an “attempt”); Russell, 369 U.S. at 765-66, 82 S.Ct. 1038; Hamling, 418 U.S. at 117-18, 94 S.Ct. 2887; cf. Girouard, 70 M.J. at 10 (explaining the critical role of the elements of the charged offense).
These components of the charge and specification do not imply the terminal element alone or when combined.[4]
V.
The Government also argues that its desired result is compelled by the MCM (2008 ed.), pursuant to the President’s delegated and Article II powers, and by Parker v. Levy.
Congress delegated to the President certain rulemaking authority under Article 36, UCMJ, 10 U.S.C. § 836 (2006), but not everything in the MCM represents an exercise of that authority, and the President does not have the authority to decide questions of substantive criminal law. See Jones, 68 M.J. at 472 (citing Ellis v. Jacob, 26 M.J. 90, 92 (C.M.A.1988)). No article of the UCMJ states that the terminal element may be omitted. Even if the President had the authority to do so, he has not set out any Rule for Courts-Martial or Military Rule of Evidence directing that the terminal element need not be alleged expressly or by necessary implication. Some of the MCM is merely explanatory or hortatory. The sample specifications and drafters’ analysis are included among these categories and do not purport to be binding. See MCM pt. I, para. 4, Discussion (2008 ed.) (“These supplementary materials do not constitute ... official views of ... any ... authority of the Government of the United States, and they do not constitute rules.”); MCM pt. I, para. 4, Discussion (2005 ed.); see also United States v. Mitchell, 66 M.J. 176, 179 (C.A.A.F.2008) (“The interpretation of substantive offenses in Part IV of the Manual is not binding on the judiciary_”).
Because the only discussion in the MCM stating that allegation of the terminal element is not required, MCM pt. IV, para. 60.c.(6)(a) (2008 ed.); MCM pt. IV, para. 60.c.(6)(a) (2005 ed.), is not set forth as language intended to be binding, we need not decide whether any such language constitutes a proper exercise of delegated authority under Article 36 or, if not, whether the President’s Article II authority would extend to such a direction.
The Government also argues that the silence of the MCM should be interpreted to constitute adoption of historical practices. However, there is no clear indication from Congress — expressed in the text of the UCMJ or otherwise — that it intended to do so. Moreover, such an interpretation would *232 require us to consider whether the actions of Congress or the President contravene constitutional mandates. In light of the canon of constitutional avoidance, we decline to adopt the Government’s position. See Clark v. Martinez, 543 U.S. 371, 380-81, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (explaining the canon of constitutional avoidance).
One could argue that, because the Supreme Court upheld the constitutionality of Article 134 on the basis of the unique history of that article in the military, see generally Levy, 417 U.S. 733, 94 S.Ct. 2547, we should also consider that history when determining whether the terminal element has been alleged by necessary implication. As noted, historically, the terminal element did not need to be clearly alleged. And, as discussed, Article 134 was traditionally implied as an LIO of any enumerated article even though the terminal element was not listed among the elements of the charged offense.
But the Supreme Court’s LIO jurisprudence has changed since Levy and so has this Court’s, circumscribing the extent to which Article 134 — and particularly its terminal element — can be implied. “The rights at issue in this case are constitutional in nature,” and the government is obligated to allege all the elements of the offense. See Girouard, 70 M.J. at 10. Moreover, Levy focused on the constitutionality of Article 134 itself, not the specific procedure of charging an Article 134 offense. See 417 U.S. at 754, 94 S.Ct. 2547. It is also worth noting that, in Levy, the terminal element of Article 134 was expressly alleged. See id. at 738 n. 5, 94 S.Ct. 2547.
The Government must allege every element expressly or by necessary implication, including the terminal element. The Government did not expressly allege the terminal element in this case. Because Appellant made an R.C.M. 907 motion at trial, we review the language of the charge and specification more narrowly than we might at later stages. Cf. Watkins, 21 M.J. at 209-10. In this context, and in light of the changes in Article 134 jurisprudence, we do not adopt the Government’s broad reading of the reference in the charge to “Article 134.” Absent the historical gloss on the meaning of “Article 134” when that phrase exists in the charge, we are compelled to hold that the charge and specification do not allege the terminal element expressly or by necessary implication. To the extent that prior decisions such as Mayo and Marker hold to the contrary, they are overruled.
Under principles of stare decisis, we examine “intervening events, reasonable expectations of servicemembers, and the risk of undermining public confidence in the law.” United States v. Boyett, 42 M.J. 150, 154 (C.A.A.F.1995). “But the doctrine does not apply when a statute, executive order, or other basis for a decision changes.” Id. (footnotes omitted); see also Agostini v. Felton, 521 U.S. 203, 235-36, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Although the dissenting opinions argue at length for the application of stare decisis, the Supreme Court has explained that “stare decisis cannot possibly be controlling when ... the decision in question has been proved manifestly erroneous, and its underpinnings eroded, by subsequent decisions of [the Supreme] Court.” United States v. Gaudin, 515 U.S. 506, 521, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).
The jurisprudence of the Supreme Court and our own Court has changed. As discussed, prior to application of the elements test in the LIO context, it was largely settled that Article 134 could be implied in every other offense and was available as an LIO. This was true even though the language of the terminal element was not contained within the charged offense. But the Supreme Court clarified the law, requiring the elements test. See Schmuck, 489 U.S. at 716-21, 109 S.Ct. 1443. After some delay, we applied that law to courts-martial, holding that constitutional notice requirements no longer permitted such broad implication of the terminal element. See Medina, 66 M.J. at 24-25. The mandates of constitutional notice requirements superseded the longstanding practice of implying Article 134 in other enumerated offenses, thus substantially limiting the extent to which the terminal element can permissibly be implied. Stare decisis does not require that we ignore the fact that the basis for the historical practice *233 of omitting the terminal element when an Article 134 offense is charged has been substantially eroded. See Boyett, 42 M.J. at 154.
Therefore, because an accused must be notified which of the three clauses he must defend against, to survive an R.C.M. 907 motion to dismiss, the terminal element must be set forth in the charge and specification.[5]
VI.
In this ease, at the end of the Government’s case-in-ehief, defense counsel made a motion to dismiss the specification of adultery under Charge II because the Government “failed to allege [the terminal element] in the charge sheet,” and therefore “it’s a failure to state an offense.” This constitutes a motion to dismiss under R.C.M. 907(b)(1)(B), which may be made “at any stage of the proceedings.” The military judge denied this motion.
Construing the text of the charge and specification narrowly, as we must based on the posture of the case, they fail to allege the terminal element expressly or by necessary implication. Because allegation of the terminal element is constitutionally required and the Government failed to satisfy that requirement here, the military judge’s decision to deny Appellant’s motion to dismiss was in error.[6] The remedy for this erroneously denied motion to dismiss is dismissal. See United States v. Smith, 39 M.J. 448, 452-53 (C.M.A.1994).
VII.
Accordingly, the judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside, and the charge and its specification are dismissed.

. As the Articles of War were revised, the numbering of the general article has been changed.

. To understand this point, some background information is helpful. In military justice, a charge consists of two parts: the "charge”— typically, a statement of the article alleged to have been violated. — and the "specification” — the more detailed description of the conduct allegedly violative of the article. R.C.M. 307(c)(2), (3).

. Of course, not all drafting errors call a conviction into question. " '[M]inor and technical deficiencies’ ” are not fatal to the charge and specification, assuming they do not prejudice the accused. Russell, 369 U.S. at 763, 82 S.Ct. 1038 (quoting Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959)). Appellant’s specification also suffers from just such a minor and technical deficiency, in that the specification contains an incomplete sentence; however, assuming all other requirements are met, such mistakes do not render the charge and specification deficient:
Specification: In that [Appellant] ... did, at or near Naval Station, Rota, Spain, on or about 26 December 2007, by wrongfully having sexual intercourse with [SK], a woman not his wife [sic],
(Emphasis added.)

. The deficiency in Appellant's charge and specification could not have been remedied by requesting a bill of particulars under R.C.M. 906(b)(6). A bill of particulars cannot cure a charge and specification that fail to state an offense. See Russell, 369 U.S. at 770, 82 S.Ct. 1038; see also R.C.M. 906(b)(6), Discussion ("A bill of particulars cannot be used to repair a specification which is otherwise not legally sufficient.”).

. Judge Baker writes that our analysis "may as a practical matter have the effect of invalidating the text of R.C.M. 307.” United States v. Fosler, 70 M.J. 225, 241 (C.A.A.F.2011) (Baker, J., dissenting). We disagree; R.C.M. 307(c)(3) calls for a two-step analysis of whether a charge and specification state an offense. If the element is not expressly stated or necessarily implied, it is absent. As we state, the constitutionality of R.C.M. 307 has not been called into question by recent case law. When we read the charge and specification narrowly, as we must when an R.C.M. 907 motion is made before the end of trial, the terminal element might be alleged using words with the same meaning. See Alston, 69 M.J. at 216. That R.C.M. 307 and the Constitu-lion permit, as a general matter, elements to be necessarily implied, does not mean that the text of every element is equally susceptible to implication consistent with constitutional notice requirements.

. We do not take issue with the President’s ability to describe conduct, such as adultery, which might invoke a violation of Article 134. See Jones, 68 M.J. at 472. Nor does our holding challenge the validity, vitality, or continued relevance of Article 134. Rather, we simply require that its elements be charged explicitly or by necessary implication, as the Constitution and the R.C.M. require. Nothing in Levy is to the contrary.