# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist MARVIN L. MAYBERRY**
**United States Army, Appellant**

ARMY 20110486

Headquarters, Fort George G. Meade (trial)
Headquarters, Combined Arms Center and Fort Leavenworth (*DuBay* hearing)
Denise R. Lind, Military Judge (trial)
G. Bret Batdorff, Military Judge (*DuBay* hearing)
Lieutenant Colonel Elizabeth G. Marotta, Staff Judge Advocate (trial)
Lieutenant Colonel Luisa Santiago, Staff Judge Advocate (*DuBay* hearing)

For Appellant: Major Vincent T. Shuler, JA; Captain Ian M. Guy, JA (on reply brief); Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain Ian M. Guy, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Captain Sean Fitzgibbon, JA (on brief).

27 June 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of aggravated sexual contact, forcible sodomy, assault consummated by battery, and communicating a threat, in violation of Articles 120, 125, 128 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 928 and 934 (2006 & Supp. III 2010) [hereinafter UCMJ].[1]

---

[1] The panel found appellant not guilty of kidnapping, in violation of Article 134. Also, after findings, the military judge dismissed specifications of aggravated sexual contact, assault consummated by battery, and assault with intent to commit sodomy, all of which appellant was convicted, as an unreasonable multiplication of charges.

The panel sentenced appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. At action, the convening authority disapproved the communicating a threat conviction and approved the remaining findings of guilty. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for fifty-four months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us for review under Article 66, UCMJ. Appellant raises two assignments of error, one of which merits discussion but no relief. The remaining assignment of error and those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) are without merit.

Appellant asserts that his defense counsel were constitutionally ineffective during the findings and presentencing portions of his court-martial by failing to investigate, prepare, and present defense and mitigation evidence.

On 26 September 2013, this court ordered a *DuBay* hearing to determine additional facts and circumstances surrounding trial defense counsel's investigation, preparation, and presentation of defense and mitigation evidence on behalf of appellant. The *DuBay* hearing concluded 28 April 2014.

Based on the record before us, we do not find defense counsel's performance constitutionally deficient.

## BACKGROUND

Appellant met BR on a dating website. They exchanged messages for a few weeks before arranging a meeting at a bar. During the course of their date, they socialized, drank alcohol, and mingled. At one point, appellant heatedly argued with and used threatening language towards a male friend who indicated that he was interested in dating BR if appellant was not.

At the end of the evening, BR rode back to Fort Meade with appellant in his vehicle. Outside his barracks, appellant and BR socialized with others and eventually went to appellant's room to watch a movie. Once in the room, both changed into more comfortable clothes, lay on appellant's bed, and began watching a movie. After a short period, BR turned away from appellant to go to sleep. Appellant turned BR over, threatened her, forced her to touch his penis with her hand, and forced her to perform oral sodomy on him. Appellant then ejaculated on BR's chest.

In its case-in-chief, the government presented strong victim testimony as well as appellant's statement to CID corroborating in large measure the victim's account provided to law enforcement and attested to at trial. Defense responded in its case

on the merits by putting forward a "good soldier" defense consisting of two witnesses who testified about appellant's good military character and good duty performance: a Lieutenant Colonel who supervised appellant for five months while deployed, and a Staff Sergeant who supervised and knew appellant for almost two years in garrison. Ultimately, appellant was convicted of forcible sodomy, aggravated sexual contact, assault consummated by battery, and communicating a threat.[2]

During the presentencing phase of the trial, defense counsel called the Lieutenant Colonel who previously testified in support of appellant on the merits. Appellant's wife and mother also provided testimony, and appellant provided an unsworn statement. The panel sentenced appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

For post-trial clemency matters, appellant was represented by new defense counsel. Appellant's new attorney provided substantial post-trial matters pursuant to Rules for Courts-Martial [hereinafter R.C.M.] 1105 and 1106. Appellant's submission specifically addressed the alleged ineffectiveness of his defense counsel, including their failure to investigate and failure to present defense, extenuation, and mitigation evidence. The matters included forty-three character letters written by both military members and civilians on behalf of appellant to support this argument.

The staff judge advocate (SJA) revised her post-trial advice to the convening authority and recommended an additional three-month reduction in confinement.[3] The convening authority approved the recommended fifty-four months of confinement.

Prior to trial, appellant provided his defense counsel with a list of fifteen witnesses willing to testify on his behalf. Appellant now complains that these witnesses were either not contacted by counsel or not called as witnesses during his court-martial.

---

[2] The panel also convicted appellant of the three previously noted additional offenses that were dismissed by the military judge after findings.

[3] Prior to appellant's post-trial clemency submission, the servicing SJA recommended to the convening authority that the Article 134 offense of communicating a threat be dismissed for failing to state the terminal element in accordance with our superior court's holding in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011). She also recommended the sentence be reassessed based on disapproval of the Article 134 offense and the confinement period be reduced to fifty-seven months.

## DISCUSSION

To establish ineffective assistance of counsel, appellant "bears the heavy burden" of satisfying the two-part test that: "the performance of his counsel was deficient and that he was prejudiced thereby." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987)). Regarding the first prong, counsel is presumed competent; thus, appellant "must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms." *Weathersby*, 48 M.J. at 670 (citing *United States v. Cronic*, 466 U.S. 648 (1984)).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, [an appellate] court must indulge a strong presumption that a defense counsel's conduct falls within the wide range of reasonable professional assistance; that is, [an appellant] must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client the same way.

*Strickland*, 466 U.S. at 689 (citations omitted).

"Thus, a court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-691.

To establish prejudice and meet the second prong, appellant must show "counsel's errors were so serious as to deprive the accused of a fair trial, a trial whose result is reliable." *Weathersby*, 48 M.J. at 670. This requires appellant to

show that the errors had more than "some conceivable effect" on the proceedings, but appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

In this case, appellant provided his defense counsel a list of fifteen potential witnesses. Defense counsel's strategy, as agreed upon by appellant, was to establish a "good soldier" defense through military witnesses who supervised appellant and were senior to him.[4] This eliminated the majority of the individuals on appellant's list. Defense counsel also excluded two potential character witnesses who had committed misconduct and would not have been ideal character witnesses. Only one additional witness who fit into the defense's criteria was not called as a defense witness. However, this witness had only supervised appellant for a few months. In sum, the defense's approach and reasoning in having only two military witnesses testify was not ineffective and, based on the record before us, was reasonable.[5]

Even assuming defense counsel's approach was deficient, appellant also fails to demonstrate that counsel's errors were so serious as to deprive him of a fair trial. There is no reasonable probability of a different outcome if additional "good soldier" witnesses appeared at trial on the merits. Further, with regard to sentencing, the convening authority adequately addressed any possible prejudice appellant may have suffered. *See United States v. Bono*, 26 M.J. 240, 242-43 (C.M.A. 1988).

Although we find counsel in this case were not constitutionally ineffective in accordance with *Strickland*, we have serious concerns regarding the apparent failure of defense counsel to oversee a paralegal under their supervision who was tasked to interview witnesses on behalf of counsel. Rule 5.3(b) of the *Rules of Professional Conduct for Lawyers* obligates judge advocates (JA) to oversee the duty performance of paralegals to ensure all activities are consistent with the *Rules of Professional Conduct* and requires, at a minimum, that JAs provide adequate instruction when assigning projects, monitor the progress of those projects, and review them when complete. Army Reg. 27-26, Rules of Professional Conduct for Lawyers, Rule 5.3 (Responsibilities Regarding Nonlawyer Assistants) (1 May 1992). Judge advocates cannot delegate responsibility for interviewing witnesses to a paralegal without adequate oversight. In this case, defense counsel did not provide that oversight or follow-up with their paralegal regarding the interviews she was tasked to conduct

---

[4] In his findings of fact following the *DuBay* hearing, the military judge found that "appellant agreed to the use of a good-soldier defense [but] . . . did not agree, however, to only using two witnesses to support the good-soldier defense."

[5] Appellant also raises the issue of a lack of evidence presented regarding character for peacefulness. We find that defense counsel's tactical decision not to put into play appellant's "reputation for peacefulness" well-reasoned in light of his admissions to criminal investigators, as well as his aggressive behavior both at the bar on the night in question and on previous occasions.

with potential defense witnesses. Counsel are cautioned to exercise appropriate vigilance in this area. While in this case the overall performance of defense counsel was not ineffective despite this failure, under other circumstances, this failure could have led to a different conclusion.

## CONCLUSION

On consideration of the entire record, including consideration of the issues personally specified by the appellant, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court