UNITED STATES of America

v.

James C. GUIN, Master-at-Arms Second
Class (E-5), U.S. Navy

NMCCA 201500062
GENERAL COURT–MARTIAL

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged: 23 October 2014

11 February 2016

**Military Judge:** CAPT John K. Waits, JAGC, USN.

**Convening Authority:** Commander, Navy Region Europe, Africa, Southwest Naples, Italy.

**Staff Judge Advocate's Recommendation:** CDR J.A. Link, JAGC, USN.

For Appellant: Philip D. Cave, Alexandria, VA, Esq.; CAPT Tierney Carlos, JAGC, USN; LT Christopher McMahon, JAGC, USN.

For Appellee: Capt Matthew Harris, USMC; LT James Belforti, JAGC, USN.

Before J.A. FISCHER, T.H. CAMPBELL, B.T. PALMER, Appellate Military Judges

Senior Judge FISCHER and Judge CAMPBELL concur.

## OPINION OF THE COURT

·PALMER, Judge:

. A military judge sitting as a general court-martial convicted the appellant contrary to his pleas of one specification of attempted sexual assault and one specification of abusive sexual contact, in violation of Articles 80 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 920.[1] The military judge sentenced the appellant to 2 years' confinement,[2] reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant raises three assignments of error (AOE):[3]

(1) the military judge erred by denying the appellant's motion to dismiss the specifications under Charge I for failing to state offenses;

(2) the evidence was factually and legally insufficient to sustain his convictions; and

(3) the President's 7 May 2013 publicized comments regarding military sexual assault constituted unlawful command influence over the military judge.[4]

After careful consideration of the record of trial, the appellant's assignments of error, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact and that no error·materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Background

`On 13 June 2013, the victim in this case, Master-at-Arms Seaman (MASN) LA, graduated from the Naval Security Force Academy at. Naval Support Activity, Bahrain. That evening, she and several other Sailors from the academy gathered to celebrate. The group started at the appellant's apartment, moved to a karaoke bar, and then `walked to another Sailor's apartment. Throughout the evening MASN LA consumed multiple alcoholic beverages, including at least two drinks which the appellant gave her. At the end of the night, four Sailors (MASN JS, Master-at-Arms Second Class (MA2) JG, MASN LA, and the appellant) took a taxi back to the appellant's apartment. During the ride, they had to stop several times so MASN LA could vomit.

At the appellant's apartment, MASN JS helped put MASN LA to bed in a guestroom. She removed MASN LA's shirt and shoes, put a metal pot next to her, and left her on the bed clothed in undergarments, socks, tank top, and jeans. Later, MASN JS returned to the guest bedroom with MA2 JG and they occupied a second bed while MASN LA slept in the bed next to them.· After approximately an hour, MASN JS left the room and spoke briefly with the appellant, who was still awake and socializing with another Sailor, RV[5]. Upon returning to the guest bedroom, she discovered MASN LA

---

1. The appellant was acquitted of an additional charge of attempted sexual contact, alleged ·on the same night with the same victim, by attempting to place his mouth on her genitalia. Art. 80, UCMJ.

2. The court-martial order (CMO) mistakenly reported the adjudged confinement as "24 months" vice "two years." A CMO must list the "sentence, if any[.]" RULE FOR COURTS-MARTIAL 1114(c)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (20132 ed.). We test error in CMOs under a harmless-error standard, *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998), and find this error did not materially prejudice the appellant's substantial rights. We nevertheless order corrective action in our decretal paragraph.

3. An additional AOE asserting this court was constrained from affirming a punitive discharge due to the lack of a verbatim record (five minutes of the trial counsel's sentencing argument was missing) was withdrawn after we ordered and then received a proper Certificate of Correction authenticating the now-added missing pages. AOE IV is now renumbered as AOE III.

4. The appellant raises this AOE pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

5. When RV testified he was a civilian. The record does not identify his rating and pay grade held on the date of the charged offenses.

was no longer there. She next saw MASN LA in the appellant's room the following morning.

MASN LA could not fully recall the events of the night and early morning and testified to having the following fragmented memories:

(1) Feeling agitated and punching a wall after leaving the karaoke bar.

(2) Sitting on a small twin-sized bed talking to MASN JS.

(3) Attempting to vomit in a pot or bowl but missing and throwing up on the floor and wall.

(4) Waking up frightened, not knowing where she was, and wearing only her underpants and a sock. The appellant walking into the room at this point and her repeatedly asking for MASN JS. The appellant asking her what she was doing in the room and why she wanted MASN JS. Crying and being unable to remain conscious.

(5) Waking to find her underwear pulled down and the appellant over the top of her with his head near her crotch. Telling him "no," and pulling his head up with her hands.[6]

(6) Waking up completely naked and the appellant holding her hand and forcing her to massage his penis. Telling the appellant "no" and unsuccessfully attempting to pull her hand away from his penis.

(7) Awaking to find herself slumped over the appellant with her arms hanging limply at her side and the appellant's erect penis in her vagina. Telling the appellant "no" and trying to pull herself away. The appellant telling her she tasted like vomit.

MASN LA's ability to fully remember future events returned in the morning. When she awoke, she found the appellant asleep next to her. After he went to use the bathroom, she found her bra, underpants, and jeans scattered about the bed and dressed

herself. When she heard the appellant returning she lay back down. MASN LA testified the appellant climbed back into the bed, put his hand down the front of her pants, and inserted his finger into her vagina. MASN LA states she froze and just lay there. The activity was interrupted when MASN JS walked into the room.

MASN LA then found her shirt, finished dressing, and at MASN JS' urging, slept for several hours with MASN JS lying between her and the appellant. After they all awoke, the appellant left while MASN LA and MASN JS remained in his apartment. When the appellant returned, they all cleaned the vomit in the spare bedroom. MASN LA eventually departed with MASN JS and went to her barracks. Within four days, MASN LA made an unrestricted report to the Naval Criminal Investigative Service (NCIS).

**I. Did the military judge err by denying the appellant's motion to dismiss the two specifications under Charge I for failing to state offenses?**

The offenses were charged as follows:

Abusive sexual contact: "Specification 1: Art.120(d): In that [the appellant], did, at or near Juffair, Kingdom of Bahrain, on or about 13 June 2013, cause sexual contact by [MASN LA], to wit: touching his penis with her hand, by causing bodily harm to her, to wit: touching his penis with her hand."

and

Sexual assault: "Specification 2: Art. 120(b)(1)(B): In that [the appellant], did, at or near Juffair, Kingdom of Bahrain, on or about 13 June 2013, commit a sexual act upon [MASN LA], to wit: penetrating the vulva of [MASN LA], with his penis by causing bodily harm to her, to wit: penetrating the vulva of [MASN LA], with his penis."[7]

The appellant now argues the military judge erred when he denied a trial motion to dismiss both specifications for failing to state, either expressly or by necessary implication,

---

6. This situation formed the basis of an additional charge for attempted sexual contact that resulted in a not guilty finding. *See* footnote 1, *supra.*

7. The military judge found the appellant not guilty of this offense, but guilty of the lesser included offense of attempt under Article 80, UCMJ.

every constitutionally-required offense element. Specifically, the appellant claims that by pleading the sexual activity as the basis of the alleged bodily harm, the Government fatally omitted the victim's lack of consent as a separate element. He cites as support a Military Judges' Benchbook (Benchbook) note that advises judges, "[w]hen the same physical act is alleged as both the *actus reus* and the bodily harm for the charged sexual assault," they should instruct members on a "final element: [ (3) ] That the accused did so without the consent of [the victim]." [8]

The appellant further avers the Government failed to plead facts that made the alleged conduct illegal. Citing *United States v. Fosler*, the appellant argues that because he raised the issue at trial, we are now required to construe narrowly each specification's plain language to determine whether they state offenses. 70 M.J. 225, 230 (C.A.A.F.2011) (holding when pleadings are challenged at trial, the court will "read the wording more narrowly and will only adopt interpretations that hew closely to the plain text."). The appellant maintains that since penetration or placing a hand on someone's genitals is not a crime unless those acts occur without the victim's consent, the Government was required to specifically alleged lack of consent. Failing to do so, the appellant argues the specifications' plain language fails to notify the appellant why his conduct was criminal.

## Analysis

As a threshold matter, we find the appellant properly raised this issue at trial. Accordingly, we now narrowly construe the plain language of the specifications here.

▇▇▇ Whether a charge and specification state an offense is a question of law that we review *de novo*. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F.2006). A specification states an offense if it alleges, either expressly or by implication, every element of the offense, so as to give the accused notice and protection against double jeopardy. *Id.* (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A.1994) and RULE FOR COURTS-MARTIAL

307(c)(3)). *See* also, *Fosler*, 70 M.J. at 229 (plead charges are sufficient if they " 'first, contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' ") (quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).

The pertinent elements of abusive sexual contact (Specification 1 of Charge I) are: (1) that the appellant committed a sexual contact upon MASN LA, and (2) that he did so under circumstances that would have constituted a sexual assault had the sexual contact been a sexual act. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV at ¶ 45a(d). In pertinent part, sexual contact is:

(A) touching or causing another person to touch, either directly or through the clothing, the genitalia ... of any person, with the intent to abuse, humiliate, or degrade any person; or (B) any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desires of any person.

*Id.* at ¶ 45a(g)(2).

The pertinent elements of sexual assault (Specification 2 of Charge I) are: "(1) that the appellant committed a sexual act upon MASN LA, and (2) that he did so by causing bodily harm to MASN LA." *Id.* at ¶ 45a(b). In pertinent part, a sexual act is: "contact between the penis and the vulva ... and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight[.]" *Id.* at ¶ 45a(g)(1). Bodily harm is "any offensive touching of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact." *Id.* at ¶ 45a(g)(3).

▇▇▇ We are satisfied that each specification alleges either expressly or by implication every element of abusive sexual contact and

---

8. Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9 at 574 n.2 and 598 n.2 (10 Sep 2014).

sexual assault. Both specifications plead the offensive acts—causing MASN LA's hand to touch the appellant's penis or actual penile penetration—both resulting in "bodily harm" to her. The definition of bodily harm provides clear notice that the touching must be offensive and includes nonconsensual sexual acts or contact.

 The appellant's reliance on the Benchbook is misplaced. First, the Benchbook is not a source of law. Only Congress has the power to " 'make Rules for the Government and Regulation of the land and naval forces.' " *Schlesinger v. Councilman*, 420 U.S. 738, 746, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) (quoting U.S. CONST. art. I § 8.). In recognition of that power, "the definition of the elements of a criminal offense is entrusted to the legislature[.]" *United States v. Castellano*, 72 M.J. 217, 221 (C.A.A.F.2013) (quoting *Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)). Notably, when Congress defined the elements of abusive sexual contact and sexual assault, *supra*, it did not include therein elements specifically requiring the Government to plead an alleged victim's lack of consent.

Additionally, the Benchbook's self-declared primary objective is to "assist military judges . . . in the drafting of necessary instructions" with "the pattern instructions . . . intended only as guides." [9] The notes to which the appellant specifically cites are "intended to explain the applicability of the instruction generally, or to alert the trial judge to optional elements[.]" [10] That the appellant was tried by a judge alone, and not members requiring instruction, negates any persuasive applicability to this case. Further, the record indicates the military judge and the appellant both understood the significance of consent in this case. In a colloquy with counsel, prior to the presentation of evidence, the military judge acknowledged his correct understanding, that because the Government plead the sexual activity itself as the basis of the alleged bodily harm, the Government was therefore also required to prove the victim did not consent to those acts.[11]

The appellant reads our higher court's holding in *Fosler* to require dismissal of the charges due to the Government's failure to allege a constitutionally-required element. We disagree. In *Fosler*, the Government failed to allege the terminal element under Article 134, UCMJ, (e.g., that the accused's conduct was to the prejudice of good order and discipline, of a nature to bring discredit upon the armed forces, or a crime or offense not capital). Ultimately, the Court of Appeals for the Armed Forces held the historically un-plead terminal element was not necessarily implied and therefore dismissed the charge. *Fosler*, 70 M.J. at 229–30. By contrast, in the appellant's case, as discussed *supra*, lack of consent is not an element under the charged offense and therefore need not be pleaded. Thus distinguished, and even though narrowly construing the specifications' plain language, we find both specifications allege all the elements of the charged offenses, the appellant was fairly informed of the charges against which he must defend, and that they were sufficiently specific to bar a subsequent prosecution. *Fosler*, 70 M.J. at 229; *Crafter*, 64 M.J. at 212.

## II. Was the evidence legally and factually sufficient to sustain the appellant's convictions?

The appellant claims that the evidence is legally and factually insufficient to support the guilty findings and that the Government failed to prove the victim's lack of consent beyond a reasonable doubt. The appellant argues MASN LA's testimony was not credible, citing several inconsistencies raised during her testimony. These include MASN LA testifying that the appellant's penis fully penetrated her vagina although she previously told an NCIS agent and a nurse that she was unsure whether she had been penetrated; [12] testifying during direct examination that she was on her back during the penetration but during cross-examination she said she was on

9. Benchbook at 3.

10. *Id.* at 4.

11. Record at 245–46.

12. *Id.* at 350–54.

top; remembering that she punched the wall outside the bar, but told a friend, a nurse, and an NCIS agent that she did not remember doing so; and remembering vomiting in the appellant's apartment, but telling an NCIS agent that she did not recall doing so.

The appellant asserts MASN LA's testimony was also contradicted by extraneous evidence. First, MASN LA testified that while at the bar, she exchanged texts, including sending the words "help me," to an acquaintance, and that the appellant thereafter took her cellphone. This testimony was contradicted by MASN JS, who testified she found the phone in MASN LA's pocket when later putting her to bed. Also, an NCIS agent testified he did not find those texts when he examined her phone and the acquaintance did not acknowledge knowing MASN LA or exchanging texts with her. Second, MASN LA testified she could not move her legs when first waking up in the appellant's room, but a Government expert witness later testified that it was not possible to be physically paralyzed strictly by the use of alcohol. Finally, MASN LA testified it was not possible that she walked into the appellant's bathroom and bedroom on her own, but MASN JS testified that somebody was in the bathroom during the night and, having accounted for everyone else in the apartment, concluded that it was MASN LA.

The appellant also argues, as supported by the opinion testimony of a defense forensic psychologist, that human beings unconsciously modify memory details based upon personal biases and internal perceptions, which then reconstruct as memories in a self-enhancing manner.[13] The appellant, concludes therefore, that MASN LA unconsciously embellished her testimony to support an account of her behavior, which otherwise would portray her in an unflattering light. Believing her testimony to be unreliable, the appellant asks this court to overturn his convictions. We decline to do so.

## Analysis

■ The test for legal sufficiency is whether, considering the evidence in the light most favorable to the Government, any reasonable trier of fact could have found the elements of the offense beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987); *United States v. Reed*, 51 M.J. 559, 561–62 (N.M.Ct.Crim.App.1999), *aff'd*, 54 M.J. 37 (C.A.A.F.2000); *see also* Art. 66(c), UCMJ. The test for factual sufficiency is whether, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also* Art. 66(c), UCMJ. Proof beyond a reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Goode*, 54 M.J. 836, 841 (N.M.Ct. Crim.App.2001). The fact finder may believe one part of a witness' testimony and disbelieve another. *Id.* When weighing the credibility of a witness, this court, like a fact finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory, or a deliberate lie. *Id.* at 844.

■ Here, there is sufficient evidence in the record to prove both specifications under Charge I beyond a reasonable doubt. The elements for sexual assault and abusive sexual contact are discussed and defined *supra*. In order to convict the appellant of attempted sexual assault, the Government was required to prove the following elements: that the appellant did some act; that the act was done with the intent to commit a sexual assault; that the act amounted to more than mere preparation; and that the act apparently tended to effect the commission of a sexual assault. MCM, Part IV at ¶ 4(b).

With regard to both the abusive sexual contact (Specification 1 of Charge I) and the lesser included offense of attempted sexual assault (Specification 2 of Charge I) the evidence showed MASN LA was intoxicated, unsteady, needed assistance, and repeatedly vomited in the appellant's presence. MASN LA testified she was in and out of consciousness and was asleep when the appellant initiated the charged sexual activity. During both offenses, MASN LA repeatedly told the appellant no and physically resisted him. Moreover, she showed no sexual interest in

**13.** *Id.* at 699–700; Appellant's Brief of 16 Jun 2015 at 27–29.

the appellant, did not even know his name, and was in a committed relationship with a female Sailor. MASN LA's testimony was corroborated by male DNA and semen found on the inside of her underwear matching the appellant's profile.[14] Also, RV provided consciousness of guilt testimony stating that while the appellant normally shared information about his sexual encounters, the day after his interaction with MASN LA, when asked, the appellant said, "[s]he just showed up in the middle of the night [and] nothing happened."[15] Finally, we find the majority of MASN LA's testimonial inconsistencies related to collateral matters or were explained by her fragmentary memories and intoxication.

Further, although we agree MASN LA gave conflicting direct testimony as to whether she was on top of the appellant during the attempted sexual assault, we note that she ultimately and unequivocally agreed during cross-examination that she was on top.[16] Doing so was not entirely inconsistent with her direct testimony. When addressing the attempted sexual assault on direct examination, she first testified, "I remember at that point waking up over the top of [the appellant] and I was slumped over the top of him . . . and he was on his back . . . and my arms were limp."[17] Although six questions later MASN LA stated she was on her back during the assault, that was also at a point in her testimony where she was crying and so emotional that the court was forced to call a recess so she could regain her composure.[18] Lastly, during cross-examination, when appellant's trial defense counsel attempted to clarify this inconsistency, MASN LA apologized, explaining, "I am really confused."[19]

When addressed in this context, we find this inconsistency not so significant as to compel us, either factually or legally, to disturb the court's verdict. It appears the most

likely explanation for the inconsistent recollection was as MASN LA stated, she was confused or made an innocent mistake due to a lapse of memory.

We next examine MASN LA's statements regarding the extent of penetration during the sexual assault. At trial, she said his penis was completely or entirely inside her, but previously made statements that she was unsure whether he penetrated her. During redirect examination, she explained when she was questioned by NCIS she believed "penetration" only applied when a woman's hymen was broken. Since hers was still intact, she was unsure if penetration had occurred.[20] Thus explained, we do not find MASN LA's uncertainty as to penetration sufficient to factually or legally disturb the court's finding.

The appellant also asserts that the Government failed to prove his lack of a mistake of fact beyond a reasonable doubt as to MASN LA's consent. He argues that MASN LA was in his bedroom; that after he attempted and she refused his efforts to perform oral sex, she merely fell asleep; that the following morning she did not physically stop him or indicate her lack of consent when he digitally penetrated her; that she remained in the bed sleeping with him and MASN JS; and that she stayed in his apartment for much of the day.[21]

■■■ Mistake of fact as to consent requires that the appellant held an honest but mistaken belief that MASN LA consented to the sexual act. "If the ignorance or mistake goes to an element requiring . . . specific intent . . . the ignorance or mistake need only have existed in the mind of the accused." RULE FOR COURTS-MARTIAL 916(j)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). An accused may not be convicted when it is shown that he does not have the

---

14. Record at 512–13. Expert testimony showed the DNA match would occur in only 1 of 2,075 Caucasian individuals, 1 of 1,815 black individuals, and 1 of 955 Hispanic individuals.

15. *Id.* at 600–01.

16. *Id.* at 347–48.

17. *Id.* at 265.

18. *Id.* at 266–67.

19. *Id.* at 347.

20. *Id.* at 390–91.

21. Appellant's Brief at 29–31.

mental state required by law for commission of that particular offense. *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F.2011) (citation and internal quotations omitted).

Because abusive sexual contact requires sexual contact to occur "with the intent to abuse, humiliate, or degrade ... or to arouse or gratify the sexual desire ..." (MCM, Part IV at ¶ 45a(g)(2)) and attempted sexual assault requires "the act was done with the intent to commit a sexual assault," (MCM, Part IV at ¶ 4(b)) both are specific intent offenses. *See United States v. Langley*, 33 M.J. 278, 279 n. 1 (C.M.A.1991) (noting Article 80, UCMJ, is a specific intent offense); and *United States v. Jones*, 49 M.J. 85, 91, (C.A.A.F.1998) (holding that "attempted rape is a specific-intent offense requiring proof of an *honest* mistake of fact") (citation omitted).

We find the Government proved the appellant's lack of mistake of fact as to consent for both offenses. The record shows no interactions or conversation between the appellant and MASN LA indicating her invitation or agreement to engage in sexual activity. To the contrary, for the reasons discussed *supra*, the evidence shows MASN LA did not consent to the sexual offenses and clearly manifested that lack of consent to the appellant. Accordingly, based on our review of the record, we conclude beyond a reasonable doubt that the appellant did not possess an honest mistake of fact as to his victim's consent.

■■■ We similarly, and for the same reasons, find no merit in the appellant's argument that we dismiss Specification 2 of Charge I because he voluntarily abandoned his attempts to penetrate MASN LA after she withheld her consent. The defense of voluntary abandonment is not available when substantial harm to the victim has occurred or where the attempted offense against the person has progressed into its last stages. *United States v. Smauley*, 42 M.J. 449, 451–52 (C.A.A.F.1995). Here the appellant, other than noting the military judge's decision to convict him of an attempted sexual assault, offers no evidence that he voluntarily aban-

doned his intent to commit a sexual assault. To the contrary, the evidence shows he had already completed his abusive sexual contact upon his victim and that this same victim, immediately prior to the attempted sexual assault, was crying, saying no, and was actively resisting. Under these circumstances, there is simply no compelling evidence in the record to support the appellant's claim of abandonment.

Ultimately, after carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact finder could have found all the essential elements of the appellant's offenses beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.[22]

**III. Did the President's publicized comments regarding military sexual assault constitute unlawful command influence over the military judge?**

In his final assignment of error, the appellant asserts the existence of apparent unlawful command influence (UCI) stemming from the 7 May 2013 comments by the President of the United States condemning sexual assaults in military. As remedy, the appellant seeks dismissal of the specifications under Charge I.

**Analysis**

■■■ When the issue of UCI is litigated on the record, we review the military judge's findings of fact under a clearly-erroneous standard while we review the "question of command influence flowing from those facts" *de novo*. *United States v. Wallace*, 39 M.J. 284, 286 (C.M.A.1994) (citation omitted). Apparent UCI exists "where an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Lewis*, 63 M.J. 405, 415 (C.A.A.F.2006). An appellant

**22.** Note: The appellant's trial defense counsel did not ask for special findings until after the general findings were announced. As such, the

request was denied as untimely. "Special findings may be requested at any time before general finding are announced." R.C.M. 918(b).

 

has the initial burden to raise "some evidence" of unlawful command influence. *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F.1999). The defense must "show facts which, if true, constitute unlawful command influence, and that the alleged unlawful command influence has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings." *Id.* (citations omitted). If the defense meets its burden, the Government must then, beyond a reasonable doubt, either: (1) disprove the predicate facts on which the allegation of UCI is based; or (2) persuade the military judge that the facts do not constitute UCI; or (3) prove at trial that the UCI will not affect the proceedings. *Id.* at 151. See *United States v. Corcoran*, No. 201400074, 2014 WL 7335548 at *8–9, 2014 CCA LEXIS 901 at *24–25, unpublished op. (N.M.Ct.Crim. App. 23 Dec. 2014), *rev. denied*, 74 M.J. 461 (C.A.A.F.2015).

▮ At trial, the appellant litigated a UCI motion stemming from concerns related to potential influence over members due to comments by the President and senior military and civilian officials on sexual assaults, as well as service level and local sexual assault training efforts.

Before the military judge issued his final ruling on the motion, the appellant requested trial by military judge alone. The appellant agreed doing so mooted all raised issues concerning potential members and further agreed his decision to seek trial by judge alone was not prompted by any prospective UCI ruling by the court. Although the appellant still wanted the military judge to

dismiss the charges to deter apparent UCI, he never alleged the military judge was affected or appeared to be affected by, any improper influence.[23] The appellant did not seek to challenge the military judge and specifically agreed that he freely and voluntarily decided to change his forum election.[24]

Notwithstanding the appellant's assertion that the military judge was aware of the President's statements, the appellant does not offer and we find no evidence that the military judge actually succumbed to any pressure, perceived or otherwise, to improperly convict or otherwise punish the appellant. Military judges are presumed to know the law and to follow it, *United States · v. Erickson*, 65 M.J. 221, 225 (C.A.A.F.2007), and there is no evidence the military judge failed to do so in this case. We are satisfied that an objective, disinterested observer, fully informed of all the facts and circumstances, would not harbor a significant doubt about the fairness of the proceedings in this trial. *Lewis*, 63 M.J. at 415.

### Conclusion

The findings and the sentence are affirmed. The supplemental CMO shall correctly reflect imposition of two years' confinement.

---

**23.** Record at 207–11.

**24.** *Id.* at 204–05.